## Helman Appeals.

Submitted June 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Rhonda Lee Jordan* and *Calvin S. Drayer, Jr.*, Assistant Public Defenders, for appellants.

*Stewart J. Greenleaf,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 23, 1974:

Dennis Helman, age 14, and his brother John Helman, age 15, were adjudged "delinquent" following a hearing in the Juvenile Division of the Montgomery County Court of Common Pleas. The appeals of both brothers have been consolidated and will be dealt with in a single opinion as the same question is involved in each. Since the appellants contend the evidence was insufficient to support the adjudication of delinquency, we examine that evidence in the light most favorable to the Commonwealth, recognizing, "that the Due Process Clause of the United States Constitution requires proof 'beyond a reasonable doubt' at the adjudication stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." *Johnson Appeal,* 445 Pa. 270, 272 (1971), citing *In Re Winship,* 397 U.S. 358 (1970), and *Terry Appeal,* 438 Pa. 339 (1970). So viewed, the evidence presented by the Commonwealth is not sufficient to support a finding that either of the Helman brothers is a "delinquent child" as defined by the Juvenile Act, 11 P.S. §50-101 et seq.[1]

A complete review of the testimony reveals the following chain of events. On October 6, 1973, the Helman brothers were met at their house by the Rudella brothers, Frank and Robert, ages 15 and 13, respectively. As the Helman boys were engaged in some lawn

---

[1] Juvenile Act, 11 P.S. §50-101 et seq. 1972, December 6, P. L. 1464, No. 333, §1, defines "delinquent child" as follows:

"§50-102

"(3) 'Delinquent child' means a child whom the court has found to have committed a delinquent act and is in need of treatment, supervision or rehabilitation."

mowing chores, the Rudellas waited until the work was completed and then the four walked to Heyser's barn for the purpose of smoking some cigars that Frank and Robert Rudella had brought with them.[2] The barn was located near the Helman home, and the boys had apparently visited it on prior occasions. They did not, however, have Heyser's permission to enter the barn, and in fact had on previous occasions been told to stay out of it.[3] The barn was used as a storage building by the Heyser Landscaping Co., and contained various landscaping equipment and materials including hemp matting and straw such as is used to cover newly seeded ground to prevent erosion. This hemp matting was in large rolls, each approximately one foot in diameter by four feet in length; the rolls were stacked on top of each other. The boys entered the barn, and after "getting situated" next to the pile of hemp matting rolls, the cigars were distributed and they proceeded to light their cigars and to smoke them.[4] Shortly thereafter, Frank Rudella stated that the fiber ends of this hemp matting would produce a sparkling effect when touched with the end of a lighted cigar. This he proceeded to demonstrate and the hemp fiber sparkled briefly and then went out. He then took a match and attempted to light the fiber with the match. He stated on direct examination as a witness for the Commonwealth, "I wanted to show the Helmans the little sparkling effect you get by the lit end of it [the hemp] and when I lit it, it got

---

[2] The Helmans testified that they went to the barn to play in a cardboard maze (used in local carnivals) that was stored there. They claimed they did not know that the Rudellas intended to smoke cigars.

[3] The Helmans claimed that they had tacit permission, at least, to be in the barn.

[4] The Helmans claimed that Frank Rudella lit their cigars for them and that they had no matches. Rudella testified that each boy lit his own cigar.

all out of control." Later he repeated this saying, "I lit the little end of the stuff, and then it started sparkling, and then one roll of it caught." On cross-examination he was asked the following series of questions: "Q. Who mentioned it [lighting the hemp] first? A. Me. Q. What exactly did you say? A. I was going to show them that the stuff did [sic] burn, it sparkled. Q. That it didn't burn? A. Right." Furthermore, Frank Rudella stated on direct examination that he had to apply the *match* twice before the hemp ignited: "Q. But the hemp didn't light at any rate? A. I had to apply the match twice. Q. All right. Now, when it didn't work the first time, did either of the Helman boys say anything to you? A. (Pause). I think so, sir. Q. What did they say, and who said it? A. I think Jay [John Helman] said 'Stop it.' Q. He said to stop it? A. Yes. Q. Did he try to stop you? A. No.[5] Q. Then what did you do? You lit a second time? A. Yes, sir. Q. And that was when it got out of hand? A. Yes, sir." The resulting fire totally destroyed the barn and its contents; total damages exceeded $20,000.

On October 25, 1973, petitions charging John and Dennis Helman with Criminal Mischief were filed with Juvenile Court, alleging that they were ". . . delinquent for the following reasons: on Saturday, October 6th, 1973, subject along with three other boys while trespassing on the property of Heyser, 400 W. Park Avenue, Troop, Pa., while one of the boys was smoking a cigar, it did cause a fire in the building and material inside. Approx. damage $15,000-$20,000. Charge—Criminal Mischief."

All four boys were present at the Juvenile Court hearing; Frank and Robert Rudella admitted responsi-

---

5 The Helmans testified that John Helman struggled with Frank Rudella in an attempt to prevent him from putting the lighted match to the hemp.

bility for the fire and property damage and were declared delinquent and placed on probation in custody of their parents. The Helman boys admitted their presence, but denied responsibility for the fire. They also were declared delinquent and placed on probation in the custody of their parents. In so deciding, the Juvenile Court found that they were in violation of Section 3304 of the Crimes Code (18 Pa. C.S. §3304) which states that one is guilty of Criminal Mischief if he "(1) Damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means."[6] The Court stated that it was "of the opinion and hence concluded that the testimony given by the Rudella boys was more credible than the testimony given by the Helman boys,

"[and was] convinced beyond a reasonable doubt that the juveniles knew or had reason to know that they were not allowed to enter the barn and smoke cigars [and] found that this act was both negligent and reckless.

"For these reasons, this court found the Helman boys to be delinquent."

Accepting as true the Juvenile Court's findings that the Rudellas' stories were correct and that the Helman boys' conduct of trespassing and smoking in the barn was reckless, we hold that the evidence was insufficient

---

[6] Section 3304(b)—specifies various grades of the offense of criminal mischief.

"(b) Grading. Criminal mischief is a felony of the third degree if the actor intentionally *causes* pecuniary loss in excess of $5,000, or a substantial interruption or impairment of public communication, transportation, supply of water, gas or power, or other public service. It is a misdemeanor of the second degree if the actor intentionally *causes* pecuniary loss in excess of $1,000 or a misdemeanor of the third degree if he intentionally *or recklessly causes* pecuniary loss in excess of $500. Otherwise criminal mischief is a summary offense." (Emphasis ours.)

to declare them delinquent. Section 50-102 of the Juvenile Act defines "delinquent act" to mean: "(i) An act designated a crime under the law of this State, . . . or under local ordinances; or (ii) a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian, or other custodian committed by a child who is ungovernable. 'Delinquent act' shall not include the crime of murder nor shall it include summary offenses unless the child fails to pay a fine levied thereunder, in which event notice of such fact shall be certified to the court."[7] The Act continues, at Section 50-320:

"(a) After hearing the evidence on the petition the court shall make and file its findings as to whether the child is a deprived child, or if the petition alleges that the child is delinquent, whether the acts ascribed to the child were committed by him. If the court finds that the child is not a deprived child or that the allegations of delinquency have not been established it shall dismiss the petition. . . .

"(b) If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and it shall then proceed immediately or at a postponed hearing to hear evidence

---

[7] The Juvenile Court found the Helmans' act of trespassing and smoking inside the barn to be "both negligent and reckless," however, their negligence if proven, would make them guilty only of a summary offense of criminal trespass. Since the conditions of §50-102(ii) were not met such a summary offense could not be declared a delinquent act. Nor is the act of trespass *alone* sufficient to declare a child delinquent. Section 3503 of the Crimes Code specifies the elements of Criminal Trespass. Even had the juveniles here been charged with Criminal Trespass, the highest grade offense for which they might have been accused would have been a summary offense [See 18 Pa. C.S. §3503, 35(2)] and as such would not amount to a "delinquent act."

as to whether the child is in need of treatment, supervision or rehabilitation and to make and file its findings thereon."

Similarly, the United States Supreme Court has ruled that juveniles, like adults, are constitutionally entitled to proof beyond a reasonable doubt when they are charged with violation of a criminal law, and that a juvenile is entitled to be declared delinquent only on evidence that demonstrates that the facts on which the declaration is made are true beyond a reasonable doubt. See *McKeiver v. Pennsylvania*, 403 U.S. 528 (1971); *In Re Winship*, supra.

In summary, then, under Pennsylvania law, a child cannot be declared a "delinquent child" unless there is proof beyond a reasonable doubt that he committed a "delinquent act"; to show that he committed a delinquent act in the instant case, it must be shown that he committed a crime, to wit, Criminal Mischief as designated by §3304. To establish that one is guilty of criminal mischief, however, it must be shown that his "employment of fire"—be it intentional, reckless or negligent—"damage[d] tangible property of another." The Helman brothers' *act of smoking cigars without permission inside the Heyser barn was found to be reckless by the Juvenile Court.* Nowhere in the record, however, is there any evidence that *that reckless act* caused the fire which destroyed the Heyser barn. To the contrary, all parties agreed that it was Frank Rudella alone who intentionally set the match to the hemp fiber mats, against the express wishes of John Helman.[8]

While it is true that the question of credibility in juvenile cases, as in all cases, is for the judge hearing

---

[8] Likewise, there is nothing on the record to indicate that either of the Helmans in any way solicited or aided Frank Rudella's intentional act of putting the match to the hemp, so as to make them liable as accomplices under Section 306 of the Crimes Code (18

the case to decide, *Commonwealth ex rel. Meta v. Cinello*, 218 Pa. Superior Ct. 371 (1971), the record of the proceeding before the juvenile court must be legally and factually adequate to sustain the findings of fact and the order of the court. A record lacking such legal or factual basis requires a reversal. See *In re Weintraub*, 166 Pa. Superior Ct. 342 (1950). Where, as here, the Juvenile Court erroneously concluded that the statutory requirements of delinquency had been met, such conclusion must be reversed.

Order of the Juvenile Court is reversed and the appellants are discharged.

---

Pa. C.S. §306). See also *Commonwealth v. Jones*, 213 Pa. Superior Ct. 504 (1968) where we said that to be an accomplice one must join in facilitating the criminal activity. A passive bystander does not become an accomplice simply because he happens to come upon or be present at the commission of an illegal act.