Leza S. DURHAM

v.

FLEMING COMPANIES, INC.

Civ. A. No. 88–8672.

United States District Court,
E.D. Pennsylvania.

July 6, 1989.

William T. Wilson, Legg Wilson and Smith, West Chester, Pa., for plaintiff.

Doreen S. Davis, Philadelphia, Pa., for defendant.

## MEMORANDUM

WALDMAN, District Judge.

Plaintiff has filed a "Motion for Reconsideration and to Alter Judgment or Allow an Amended Complaint" following entry of the court's order of April 24, 1989, dismissing her complaint pursuant to Fed.R.Civ.P. 12(b)(6). Although not so styled, the court will treat plaintiff's motion as one for reconsideration or, in the alternative, to amend or alter judgment pursuant to Fed. R.Civ.P. 59(e) so that an amended complaint might be filed pursuant to Rule 15(a). *See Moore's Federal Practice*, Second Ed. Vol. 3, p. 15–107 (1988); *Roque v. City of Redlands*, 79 F.R.D. 433, 436 (C.D. Cal.1978).

Plaintiff, an at-will employee of defendant, sought to maintain a cause of action for wrongful discharge. She alleged that she was terminated for disclosing to a warehouseman scheduled to make a delivery to defendant's food distribution facility that striking picketers were behaving in "an intimidating and violent fashion." In an attempt to bring her case within the two narrow exceptions to the termination-at-will doctrine under Pennsylvania law, plaintiff asserted that her discharge violated public policy and was done with the specific intent to harm her.

Plaintiff contended that her termination compromised her rights and obligations pursuant to the guarantee of free speech, the Labor Management Relations Act, Title 29 U.S.C. § 151 et seq., and the state reckless endangerment statute, Title 18 Pa. Cons.Stat. Ann. § 2704. The court found that plaintiff had not alleged facts sufficient to support a finding of specific intent to harm, and that her discharge did not violate the type of significant and clearly mandated public policy required to maintain her action under Pennsylvania law. On April 24, 1989, the court granted defendant's motion to dismiss the complaint for failure to state a cognizable claim.

█ The contentions in support of plaintiff's motion pertain to facts not alleged in the complaint and to a newly articulated public policy basis on which she now seeks to sustain her wrongful discharge claim. Accordingly, the court will deny the motion for reconsideration of its decision of April 24, 1989, insofar as it necessarily was based on the allegations in the complaint as filed. The court will consider whether its order and judgment should be altered or amended to permit plaintiff to file an amended complaint in view of her new allegation and theory.[1]

█ Amendments, although liberally granted, are committed to the sound discretion of the court and leave to amend is properly denied where it would not remedy the deficiency in the original pleading or save it from a motion to dismiss. *See Moore's Federal Practice, supra,* at 15–106 and the numerous cases cited therein.

---

1. Whether an amendment should be allowed is governed by Rule 15(a). Thus, a motion to alter the judgment should be granted only if leave to amend is appropriate. *See* Wright & Miller, *Federal Practice & Procedure: Civil* § 1489, p. 447 (discussing analogous situation regarding a Rule 60(b) motion to reopen judgment).

See also Textor v. Board of Regents of Northern Illinois University, 711 F.2d 1387, 1391 n. 1 (7th Cir.1983); Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir.1983), cert. denied, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); Burt v. Blue Shield of Southwest Ohio, 591 F.Supp. 755, 764 (S.D.Ohio 1984); Scoggins v. Moore, 579 F.Supp. 1320, 1322 (N.D.Ga. 1984), aff'd, 747 F.2d 1466 (11th Cir.1984); DeRoburt v. Gannett Co., Inc., 551 F.Supp. 973, 977 (D.Hawaii 1982).

■ Plaintiff would now allege that a firearm was discharged during the strike at defendant's premises on August 24, 1988. Counsel contends that he became aware of this fact only after he filed the complaint and brief in opposition to defendant's motion to dismiss. Yet, he contends that plaintiff was aware of this incident from the time it occurred. It appears that counsel was aware of this occurrence at least some time before the court ruled on the motion to dismiss. See Plaintiff's Memorandum, p. 6. The court will not, however, deny plaintiff's request for untimeliness alone in the absence of any showing of prejudice by the defendant. See Cornell & Co., Inc. v. Occupational Safety & Health Review Commission, 573 F.2d 820, 823–824 (3d Cir.1978). See also Textor, supra, at 1391 (applying prejudice test in post-judgment context, as well).

■ Plaintiff now argues that this allegation would save the complaint because it indicates that truckers entering defendant's premises were in danger of death or serious bodily harm and thus a public policy purportedly reflected in the reckless endangerment statute would be implicated in plaintiff's termination. The specific allegation, set forth in an attached affidavit filed in a state court injunctive action on September 8, 1988, is that a gunshot was fired over the head of defendant's chief security officer by an unknown individual outside the gate to defendant's facility the afternoon of August 24, 1988.

It is uncertain that the single discharge of a firearm over someone's head in an open space, under the circumstances alleged, would create a sufficiently real threat of death or serious bodily harm to sustain a reckless endangerment conviction. More importantly, there is still no support provided for the contention that the plaintiff would be guilty of reckless endangerment for failing to warn truckers making deliveries to the defendant. Plaintiff acknowledges that there are no cases applying the state reckless endangerment statute in such circumstances. Plaintiff cites a New York state trial court opinion which she contends did approve the application of a similar statute to incidental conduct. The court does not find that case, People v. Vizzini, 78 Misc.2d 1040, 359 N.Y.S.2d 143 (1974), to be apposite. In Vizzini, the court held that labor union leaders could be charged with reckless endangerment for their affirmative conduct in initiating an illegal strike by New York City firemen.

Even where a statute may reflect a significant public policy, it is far less likely to be implicated when the employee is neither asked to violate nor victimized by another's violation of that statute. Significantly, in all but one of the cases in which the public policy exception was held applicable under Pennsylvania law, the employee had either refused to violate the law or was penalized for exercising a legal or constitutional right. See Woodson v. AMF Leisureland Centers, Inc., 842 F.2d 699 (3d Cir.1988) (refusal to serve alcohol to clearly intoxicated patron); Novosel v. Nationwide Insurance Co., 721 F.2d 894 (3d Cir.1983) (exercising right of political expression and association); Perks v. Firestone Tire and Rubber Co., 611 F.2d 1363 (3d Cir.1979) (refusal to take polygraph test in face of statute prohibiting such tests); Shaw v. Russell Trucking Lines, Inc., 542 F.Supp. 776, 779 (W.D.Pa.1982) (refusing to commit motor vehicle violation); and, Reuther v. Fowler & Williams, Inc., 255 Pa.Super. 28, 386 A.2d 119 (1978) (absence because of jury service).

■ Plaintiff also argues that it is significant that the danger posed by a firearm is latent because it buttresses her argument that she "would certainly" be civilly liable for injuries sustained by truckers who

crossed the picket line. The plaintiff appears to misconstrue the court's parenthetical observation that a trucker who crossed a line of intimidating and violent picketers might well be found to have proceeded with disregard for the risks inherent therein and thus to have been contributorily negligent, as critical to its decision. Rather, as indicated, the court was merely noting that it was neither clear nor certain that plaintiff or defendant would be civilly liable if plaintiff had acted otherwise. Information that defendant had a force of security officers present who were escorting truckers, contained in her new submission, renders plaintiff's contention regarding civil liability even less certain. What is germane to the court's determination is that the tort principles under which one may be civilly liable to invitees for failing to protect them against dangerous conditions on one's premises do not represent the type of clear and substantial public policy contemplated by the courts that have recognized this narrow exception in wrongful discharge cases. *See Novosel, supra,* at 899.

■ Plaintiff also seeks to amend the complaint to articulate a new public policy basis for maintaining her cause of action, specifically, the state criminal mischief statute, Title 18 Pa.Cons.Stat. Ann. § 3304. This statute provides, in essence, that a person who intentionally or recklessly damages tangible property or by threats or deception causes pecuniary loss to another is guilty of a summary offense. If the actor intentionally causes pecuniary loss in excess of $1,000, then the offense is a second degree misdemeanor. If the actor intentionally causes a loss in excess of $5,000 or substantially impairs or disrupts the provision of basic public services such as the supply of power, water, gas, telephone service and the like, then the offense is a third degree felony.

Plaintiff has alleged by reference several acts of minor vandalism. On one occasion, an unidentified object was allegedly thrown at the side of a truck. On another, an air hose was allegedly disconnected, rendering a truck inoperable until the driver stepped down and reconnected it. Arguably, those responsible for these acts might be guilty of a summary offense. There is no case, however, in which anyone in Pennsylvania has been convicted of criminal mischief other than the actor whose conduct directly causes loss or damage. The failure to warn about or stop persons about to damage property is insufficient to establish criminal mischief. *See In Interest of Helmen,* 230 Pa.Super. 484, 327 A.2d 163 (1974). Moreover, the criminal mischief statute does not appear to embody a public policy that "strikes at the heart of a citizen's social right, duties and responsibilities." *Novosel, supra,* at 899.

■ Taken together, plaintiff's allegations and submissions indicate that defendant was attempting to operate its business in the face of picketers using abusive language and intimidating tactics to deter truckers from making deliveries to defendant's facility, but that virtually no acts of serious violence or destruction against persons or property occurred. The plaintiff was free to decline to offer an assessment of this situation when those scheduled to make deliveries inquired, or to suggest that they come and assess the situation for themselves, or to advise them that security personnel were on site and available to escort truckers. Instead, she discouraged a warehouseman from making a delivery. In these circumstances, the court does not discern the type of significant and clearly mandated public policy implication in plaintiff's termination that warrants a new and expansive application of the narrow exceptions in the law of wrongful discharge.

Virtually every statute, criminal sanction and civil remedy reflect some policy judgment concerning the protection of persons and property or the maintenance of social and economic order. To read into each of these a public policy exception to the termination-at-will doctrine would undermine that rule in just the manner the court recently warned against in *Paul v. Lankenau Hospital,* 375 Pa.Super. 1, 17, 543 A.2d 1148, 1156 (1988). Just four weeks ago, the Pennsylvania Supreme Court noted that public policy exceptions to the at-will employment rule "have been recog-

nized in only the most limited of circumstances." *Clay v. Advanced Computer Application, Inc.,* —— Pa. ——, 559 A.2d 917 (Pa.1989). Indeed, in a concurring opinion in *Clay,* the Chief Justice questioned whether any exception to the rule was created, dismissing the often cited language from *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974), in support of a public policy exception as "gratuitous dicta."

As the court has indicated earlier, it does not suggest that the defendant acted wisely or humanely in this case. The court does find that even if amended to allege the discharge of a firearm over the head of a security official and a public policy claim based on the state criminal mischief statute, plaintiff's complaint would not state an actionable claim for wrongful discharge and could not withstand a motion to dismiss. Accordingly, leave to amend will not be granted and the plaintiff's motion will be denied.

An appropriate order will be filed this date.