J-S49009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: N.M.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | No. 296 MDA 2015 |

Appeal from the Dispositional Order Entered January 23, 2015
In the Court of Common Pleas of Perry County
Juvenile Division at No(s): CP-50-JV-0000019-2014

BEFORE:  BENDER, P.J.E., ALLEN, J., and OLSON, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED AUGUST 25, 2015**

Appellant, N.M.P., a juvenile, appeals from the order of disposition, entered following an adjudication of delinquency for the offense of terroristic threats.  Appellant raises several claims on appeal, including challenges to the sufficiency and weight of the evidence to support his adjudication of delinquency.  After careful review, we reverse.

In May of 2014, Appellant was charged with the crime of terroristic threats, 18 Pa.C.S. § 2706, stemming from the following evidence, as summarized by the juvenile court:

> [T]he victim testified that he heard from his girlfriend "again that [Appellant] was flirting with her" and he "knew she was uncomfortable with him."  On the day of the incident, the victim saw Appellant sitting at the same table as his girlfriend in class.  He later encountered Appellant in the hallway where he told [Appellant] to "back off" his girlfriend before walking away to his next class.  As the victim walked away[,] Appellant went into the bathroom where he met another student, [A.M.]  [A.M.] testified that when Appellant entered he began hitting things such as the towel dispenser in anger.  [A.M.] asked Appellant what was wrong and Appellant replied that [the victim] told [Appellant] to leave [the victim's] girlfriend alone.  Appellant commented that he was mad and after [A.M.] told him to calm

down, Appellant stated that he was going to bring a gun to school and shoot an individual in the green jacket. [A.M.] further testified that upon entering his seventh period [s]cience class, he noticed that [the victim] was wearing a green jacket. Upon further reflection, [A.M.] requested to go to the Office to report the bathroom incident.

Juvenile Court Opinion (JCO), 4/9/15, at 2-3 (unpaginated; citations to the record omitted).

On December 15, 2014, the juvenile court found, based on the above-stated evidence, that Appellant committed the offense of terroristic threats. On January 15, 2015, a second hearing was conducted to determine if Appellant required treatment, supervision, or rehabilitation. After concluding that Appellant did require further treatment, the juvenile court adjudicated Appellant delinquent and imposed a disposition of probation and counseling "until successfully discharged" by the designated counseling center. N.T., 1/15/15, at 18-19. The court's dispositional order was entered on the docket on January 23, 2015.

Appellant filed a timely notice of appeal, as well as a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he states four issues for our review:

A. Did the lower court commit error in finding that Appellant committed the act of Terroristic Threats where the evidence was insufficient to support the [juvenile] [c]ourt's finding?

B. Did the lower court commit error in adjudicating Appellant as a Delinquent Child where the evidence was insufficient to support the finding that Appellant is in need of treatment, supervision, or rehabilitation?

C. Did the lower court commit error in adjudicating Appellant delinquent when such determination was against the weight of the evidence?

D. Did the lower court err by entering its finding that Appellant committed the act of Terroristic Threats [87] days after the conclusion of the adjudicatory hearing?

Appellant's Brief at 10.

Appellant's first two issues present challenges to the sufficiency of the evidence to support his adjudication of delinquency.

> When a challenge to the sufficiency of the evidence is made, our task is to determine whether the evidence and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, were sufficient to enable the fact-finder to find every element of the crime charged beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. Moreover, we must defer to the credibility determinations of the [juvenile] court, as these are within the sole province of the finder of fact. The trier of fact, while passing upon the credibility of witnesses, is free to believe all, part, or none of the evidence.

*In re J.M.*, 89 A.3d 688, 691 (Pa. Super. 2014) (citation omitted).

In *Commonwealth v. M.W.*, 39 A.3d 958 (Pa. 2012), our Supreme Court clarified that "the Juvenile Act requires a juvenile court to find that a child has committed a delinquent act *and* that the child is in need of treatment, supervision, or rehabilitation, before the court may enter an adjudication of delinquency." *Id.* at 964 (emphasis in original). If a court determines the juvenile committed the delinquent act, but "is not in need of treatment, supervision, or rehabilitation, it should dismiss the proceeding, terminate jurisdiction, and discharge [the juvenile]." *Id.* at 966; *see also*

42 Pa.C.S. § 6341(b) ("If the court finds that the child is not in need of treatment, supervision or rehabilitation it shall dismiss the proceeding and discharge the child….").

Here, Appellant first challenges the sufficiency of the evidence to sustain the juvenile court's finding that he committed the offense of terroristic threats. He also avers, in his second issue, that the evidence failed to prove that he is in need of treatment, supervision, and/or rehabilitation. Because, for the reasons stated *infra*, we agree with Appellant's second claim, we need not address his first issue.

After determining that Appellant committed the offense of terroristic threats, the juvenile court conducted a hearing on January 15, 2015, to assess whether he was in need of treatment, supervision, or rehabilitation. At that proceeding, Appellant presented the testimony of Jacqueline Spriggle, an outpatient therapist with Newport Counseling Center. N.T., 1/15/15, at 6. Ms. Spriggle testified that she had an office at Appellant's school, and she began counseling Appellant in 2011 when he relocated to Pennsylvania from West Virginia and "was having a difficult time transitioning…." *Id.* at 7. Ms. Spriggle testified that Appellant also has been diagnosed with Asperger's Syndrome. *Id.* Ms. Spriggle counseled Appellant weekly until 2013, when he "successfully completed treatment" and was "discharged[.]" *Id.* at 7-8. However, approximately one month after the incident in the present case, Ms. Spriggle began biweekly counseling for Appellant. *Id.* at 8. Ms. Spriggle testified that she resumed counseling

- 4 -

because "the school was pushing for [Appellant] to be in counseling, … and he was having difficulty coping with the stress of being charged with this." *Id.*

Ms. Spriggle was then asked "whether or not [Appellant] has an anger problem[,]" to which she replied, "I don't believe that he does." *Id.* While Ms. Spriggle did state that Appellant seems "approximately two years younger" than his "chronological age[,]" she indicated that she does not feel Appellant "needs any type of special treatment." *Id.* at 9. Additionally, when asked if she feels that Appellant "is in need of any supervision[,]" Ms. Spriggle stated, "no, I don't." *Id.* When asked if she feels Appellant "is in need of any rehabilitation[,]" Ms. Spriggle answered, "No. He's actually very emotionally stable." *Id.* at 9-10.

With this testimony, Appellant's direct-examination of Ms. Spriggle concluded. The Commonwealth elected not to cross-examine. *Id.* at 10. However, the court then questioned Ms. Spriggle, as follows:

> THE COURT: Okay. Well, if [Appellant] doesn't need any rehabilitation or treatment, why is he still counseling with you?
>
> [Ms. Spriggle]: He was still experiencing stress related to this, and his lawyer thought it would be a good idea to have him as long as the Court would like him in counseling, but I don't have any behavioral concerns.
>
> THE COURT: Okay. And was that as a result of your counseling or is that from day one?
>
> [Ms. Spriggle]: The result of counseling, and his family is very active in helping any recommendations, and they kept up with it after treatment.

- 5 -

*Id.* at 10. After this questioning by the court, Ms. Spriggle's testimony concluded. Appellant's parents were then permitted to speak to the court, and they essentially explained why they believe their son did not make the alleged threat heard by A.M.

At the close of the hearing, the court found that Appellant was "in need of treatment, supervision, and/or rehabilitation…." *Id.* at 18. The court explained its reasons for this finding, as follows:

> THE COURT: I said the problem I see with the whole thing is [that,] off and on[,] I think [Appellant] is going to need counseling any time there's stressful situations in his life, and it gets better or not, and part of that is the Asperger's. I mean, there's some special conditions here. I mean, that's the case that you're going to have the rest of your life dealing with stress. It's going to be the tough part with you. But the problem I get into, and that's how this situation happens, you know, the issue today, and this is what your parents completely just miss, is not whether you are rightfully or wrongly confronted, it's how you handled that situation. And that is the whole reason you're here. Not whether they were wrong to begin with. They're absolutely wrong for confronting you, but that's not a crime. The crime is how you reacted to that.
>
> I'm impressed [by] the fact that you've been in counseling, you're doing well. I think those situations can go up and down as the counselor said due to stress, whether it's from the charges, whether it's from kids accusing you of something, whether it's how you or your family feel the school is treating you, those things are there. And that's why I think there's need of further treatment, because it's going to be an ongoing thing, and I think that is clear today. Everything you're asking for I begged to happen before it got to this point, and it didn't, unfortunately for everybody involved.[1] But due to that ongoing

---

[1] It appears that this sentence refers to the fact that the court believed Appellant should have entered a consent decree in this case. The following
*(Footnote Continued Next Page)*

need for treatment, I'm adjudicating you delinquent. [I] [f]ind you're in need of treatment, supervision and/or rehabilitation, and, therefore, I adjudicate you a Delinquent Child.

*Id.* at 17-18.

On appeal, Appellant contends that the court erred in concluding that he was in need of treatment, supervision, or rehabilitation based on Ms. Spriggle's testimony, which directly contradicted the court's conclusion. We are compelled to agree. "While it is true that the question of credibility in juvenile cases, as in all cases, is for the judge hearing the case to decide, … *the record of the proceeding before the juvenile court must be legally and factually adequate to sustain the findings of fact and the order of the court.* A record lacking such legal or factual basis requires a reversal." **In Interest of Helmen**, 327 A.2d 163, 167 (Pa. Super. 1974) (emphasis added). Here, in determining that Appellant was in need of further treatment, the juvenile court found that: (1) Appellant is "going to need counseling any time there's stressful situations in his life," (2) Appellant is going to have a difficult time dealing with stress for "the rest of [his] life[,]" and (3) Appellant's difficulty dealing with stress is "going to be an ongoing thing…." N.T. at 17-18. However, nothing in Ms. Spriggle's testimony supports these findings by the court. Indeed, Ms. Spriggle said that Appellant is "very emotionally

*(Footnote Continued)* ——————————

comment by the court, made at the hearing prior to Ms. Spriggle's testifying, demonstrates this point: "As far as a consent decree, I thought that was a great idea to begin with in this case. I strongly recommended it. It was refused." N.T. at 5.

stable[,]" and concluded that he is *not* in need of any supervision or rehabilitation. *Id.* at 9-10. The Commonwealth did not present any evidence to refute Ms. Spriggle's testimony.

We also must point out that at the start of the January 15, 2015 hearing, *prior to Ms. Spriggle's taking the stand*, the court stated:

> THE COURT: I don't plan on placing [Appellant] or anything along those lines, What I want to make sure of in this case is that he's supervised in order to ensure that any counseling, all those things continue, he continues doing that, and I don't think we'll have any problems in this case. That's what I look to do today just to give you a heads-up.

*Id.* at 5. The court's comments indicate that, even without hearing any evidence, it had predetermined that Appellant required treatment, namely continued counseling.

Based on this record, we agree with Appellant that there was insufficient evidence to support the juvenile court's determination that he was in need of treatment, supervision, or rehabilitation. Accordingly, we reverse the court's order, entered January 23, 2015, adjudicating Appellant delinquent and imposing a disposition of probation and counseling. Based on this decision, we need not address Appellant's remaining issues.

Order reversed.

Judge Olson joins this memorandum.

Judge Allen files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/25/2015</u>