Michael E. **REDICK**

v.

**KRAFT, INC.**

Civ. A. No. 89–2971.

United States District Court, E.D. Pennsylvania.

Aug. 16, 1990.

---

Harold K. Cohen, Philadelphia, Pa., for plaintiff.

Joseph J. Costello, Philadelphia, Pa., for defendant.

## MEMORANDUM

WALDMAN, District Judge.

### I. *INTRODUCTION*

Plaintiff Michael Redick brought this action against his former employer Kraft, Inc. ("Kraft") after he was terminated by Kraft on December 22, 1988. Plaintiff is a citizen of Pennsylvania and was employed in the Commonwealth by Kraft, an Illinois corporation. Redick's complaint asserts four separate causes of action against Kraft: Count I—breach of contract; Count II—fraudulent misrepresentation; Count III—violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1140 ("ERISA"); and, Count IV—violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa.Stat.Ann. § 260.1, *et seq.* Redick claims four losses: (1) a 1988 bonus from Kraft in an amount of $14,059.74; (2) two weeks of salary for the period from December 22 through January 6 (the "notice period") in an amount of $1,953.85; (3) a contribution to his Section 401K Plan for the notice period; and, (4) a liquidated damages claim for the salary payment pursuant to the WPCL.

Kraft now moves for summary judgment on all four counts of the complaint. For the reasons that follow, the court will grant Kraft's motion for summary judgment with respect to Redick's claims for salary during the notice period and alleged violation of ERISA, and will deny Kraft's motion with respect to Redick's claims for his 1988 bonus and liquidated damages under the WPCL.

The plaintiff seeks leave to amend his complaint to add a claim for wrongful discharge. For the reasons set forth in section IV. D. of this Memorandum, such leave will be denied. Finally, defendant has requested sanctions against plaintiff based on averments in his complaint and for filing an allegedly frivolous motion to amend.

### II. *SUMMARY JUDGMENT STANDARD*

Federal Rule of Civil Procedure 56(c) directs the court to enter summary judgment when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is inappropriate, however, where the evidence before the court reveals a genuine factual disagreement requiring submission to a jury. An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether "there is a genuine issue for trial." *Anderson*, at 250, 106 S.Ct. at 2511. However, "[i]f the evidence is merely colorable ..., or is not significantly probative ..., summary judgment may be granted." *Anderson*, at 249–50, 106 S.Ct. at 2511. Only facts that affect the outcome of a trial under applicable law are deemed to be material. *Anderson,*. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of identifying for the court those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has made such a showing, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

When deciding a summary judgment motion, the court must view all inferences in a light most favorable to the non-moving party, *U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), and "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

## III.  *FACTS*

The record before the court consists of the pleadings, affidavits, depositions and exhibits submitted by the parties. The following facts are not in dispute.

Redick was first employed by Kraft in April of 1987 as an engineering manager for the Kraft Dairy Group. Redick's supervisor was Mark Buchheim, the director of production for Kraft. In September of 1988, Mr. Buchheim submitted his resignation with two weeks' notice to Kraft. When Kraft determined that he would be leaving to work for a competitor, John LaBatt, Ltd. ("LaBatt"), Buchheim was told to leave immediately. Following his departure from Kraft, Buchheim telephoned Redick every week or two to keep in touch. In the middle of November, 1988, Buchheim was authorized to hire an engineering manager for one of the dairy subsidiaries of LaBatt. He telephoned Redick to suggest that he apply for the position. Redick was interested in pursuing the opportunity with LaBatt and sent his resume to Buchheim.

On November 21, 1988, Redick met with Buchheim and Neal Blackburn, LaBatt's Vice President for Engineering. This meeting was a technical engineering interview. At this meeting, Redick was not offered a position with LaBatt, and no salary figures or potential starting dates were discussed.

Redick was interviewed in early December 1988 by Richard Cliff, Vice President for Human Resources of Tuscan Dairies, a LaBatt subsidiary. During this interview, no job offer was made to Redick and again there was no discussion of salary or starting date. On December 10, 1988, Neal Blackburn contacted Redick and offered him a position with LaBatt. Blackburn and Redick discussed salary range and benefits at this time. Redick did not accept the offer at that time, indicating he would wait to see the offer in writing.

Redick subsequently received a written offer from LaBatt on December 14, 1988. He signed and dated the letter accepting employment with LaBatt and indicated a preferred starting date of January 16, 1989. Redick did not yet have a definite starting date or location for employment with LaBatt. Redick mailed his acceptance to LaBatt on December 17, 1988.

The following Wednesday, December 21, 1988, Redick traveled to Boston with Lawrence Gundrum, Redick's Supervisor and Vice President of Operations for the frozen products group of Kraft, and Hugh Mazza, Vice President and Director of Human Resources for the dairy division of Kraft, also happened to be in the Boston area that day on unrelated business. The three men were scheduled to fly back to Philadelphia together. While at Logan Airport in Boston, Mazza told Redick that they were aware that he had received an offer of employment from another company and were under the impression that he had accepted that offer. Redick responded that he had not accepted the offer of employment but was planning to make a decision over the Christmas holidays. Gundrum stated that he and Mazza needed to make plans for the coming year and to know Redick's plans by the following day. Gundrum commented to Redick about his annual bonus under the Kraft Management Incentive Plan.

Redick returned home that evening and prepared a letter of resignation dated December 22, 1988. Redick's resignation letter stated that "as of January 6, 1989 I will be terminating my employment with Kraft Dairy Group." He submitted the resignation to Gundrum and Mazza on December 22, 1988. At the time of Redick's resignation, the Kraft Employee Handbook provided that "to terminate in good standing, an

employee should give at least two weeks' advance notice to his supervisor." The handbook did not provide that once notice was given the employee had a right to remain and be paid for two weeks. Upon learning of plaintiff's resignation, Gundrum and Mazza told him to leave immediately.

Plaintiff had access to proprietary and confidential information at Kraft. The defendant has a policy of immediately severing any employee who resigns to go to work for a competitor.

The Kraft Management Incentive Plan (the "Incentive Plan") provided that if an Incentive Plan participant resigned prior to December 31 of any year, the participant would not be eligible for an annual bonus. The plan further provided that an employee who was involuntarily terminated during the year "may" be paid a prorated bonus at the discretion of the committee which administered the plan. Hugh Mazza was responsible for the administration of the Incentive Plan. Kraft treated the resignation of Redick as effective immediately and declined to pay Redick a bonus for 1988 pursuant to the Incentive Plan.

Following his termination from Kraft, Redick received no bonus under the Incentive Plan and was not paid a salary for the notice period. As a result, Redick was unable to make the six percent contribution from his salary to the Kraft Section 401K Plan (the "401K Plan") for this period. Redick was not eligible for matching contributions by Kraft to his 401K Plan at the time of his termination, and Redick would not have become eligible for such matching contributions prior to January 6, 1989, the date of his intended departure from Kraft. Kraft did pay to Redick his accrued vacation pay.

The parties do dispute, however, the nature of Gundrum's comment to Redick on December 21, 1988 about the annual bonus. Redick alleges that Gundrum told him that if he was delaying his resignation until the turn of the year to secure a bonus, Gund-

rum would get him his bonus the next day.[1] Gundrum maintains that he merely mentioned to Redick that the annual bonuses might be available the following day, but denies that he promised plaintiff that his bonus would be secure if he promptly revealed his employment plans.

## IV. *DISCUSSION*

### A. *Plaintiff's Contract and Misrepresentation Claims*

Redick maintains that a binding contract to pay a bonus and two weeks of salary was formed as a result of his version of this discussion on December 21, 1988 at the Boston airport. Alternatively, Redick contends that Mazza and Gundrum acted to defraud him of a bonus and two weeks of salary.

■ To establish the existence of an agreement one must show that: (1) both parties have manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and, (3) there is mutuality of consideration. *Channel Home Centers v. Grossman*, 795 F.2d 291, 298–99 (3d Cir.1986). The existence and terms of an oral contract must be established by clear and precise evidence. *Browne v. Maxfield*, 663 F.Supp. 1193, 1197 (E.D.Pa.1987).

To sustain a fraudulent misrepresentation claim, plaintiff must prove five elements: (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will act; (4) justifiable reliance by the recipient upon the misrepresentation; and, (5) damage to the recipient as a proximate result. *Neuman v. Corn Exchange National Bank & Trust*, 356 Pa. 442, 51 A.2d 759 (1947).

■ The parties dispute what was said about a bonus, whether Gundrum or Mazza had actual or apparent authority to contract with Redick on behalf of Kraft, as well as the intent of the Kraft officials in making statements regarding Redick's bonus and employment plans. If Redick's

---

**1.** Contrary to defendant's contention, there is evidence that Redick believed Gundrum and Mazza had authority to bind Kraft with the promise allegedly made. (Redick Afft. of 12/8/89.)

version is believed, a jury reasonably could find that Kraft breached an agreement to pay plaintiff an annual bonus in return for his providing information of value to the company. Likewise, in the context of all of the surrounding circumstances, a jury could find that Gundrum made a fraudulent misrepresentation to plaintiff about the security of his bonus.[2]

■ Kraft argues in the alternative that if a contract exists, it was induced by fraud and thus is void. The alleged fraudulent inducement consists of plaintiff's statement that he had not yet decided whether to accept the offer from LaBatt. A party may avoid a contract by showing that he is the victim of a misrepresentation by the other contracting party in conjunction therewith if such misrepresentation is material or fraudulent. *Germantown Mfg. Co. v. Rawlinson*, 341 Pa.Super. 42, 48, 491 A.2d 138 (1985). A misrepresentation is material if it likely would have induced a reasonable person to enter into the contract. *Id.* at 49, 491 A.2d 138. A misrepresentation is fraudulent if the person making it knew or believed that his assertion was false at the time he made it. *Id.*

■ The plaintiff contends that because no starting date or place of employment with LaBatt had been agreed to, he believed that important terms had yet to be negotiated and that he was not obligated to LaBatt at that point in time. Thus, he may have perceived that he had an opportunity to weigh or reconsider his plans over the Christmas holiday. There is considerable evidence of record which contradicts this assertion. Nevertheless, there are sufficient disputes as to plaintiff's belief, intent and state of mind on December 21, 1988 to require submission of defendant's fraudulent inducement claim to a fact-finder.

Because there are genuine issues of material fact to be resolved with respect to Redick's contract and fraudulent misrepresentation claims for his bonus under the Incentive Plan, the court will deny Kraft's motion for summary judgment on Counts I and II of the complaint as they pertain to the claimed bonus.

■ The court concludes, however, that summary judgment is appropriate in favor of Kraft on Counts I and II of the complaint with respect to Redick's claim for salary during the notice period. Under any reading of the evidence, neither Mazza nor Gundrum ever entered into a contractual agreement or made a fraudulent misrepresentation regarding Redick's claim for two weeks' salary following his December 22 notice of resignation. The court finds that no reasonable jury could conclude that: (i) Mazza and Gundrum acted to contractually bind Kraft to pay Redick for the notice period or (ii) they fraudulently misrepresented that Kraft would pay Redick's salary during the notice period. Redick has submitted no evidence whatsoever that any representations or promises were made to him regarding the notice period. It is clear from the affidavits and depositions of Redick, Mazza and Gundrum that the only representation or promise made to Redick pertained to his 1988 bonus.

Accordingly, the court will enter partial summary judgment in favor of Kraft on the salary related contract and fraud claims.

### B. *Plaintiff's ERISA Claim*

In Count III of the complaint, Redick asserts that Kraft violated the provisions of ERISA because Mazza and Gundrum terminated Redick "with the express and specific intent of depriving ..." Redick of his benefits under Kraft's 401K Plan. Although the allegations in Count III are somewhat cryptic, the court interprets Count III as alleging a violation of section 510 of ERISA. 29 U.S.C. § 1140. Section 510 of ERISA provides that:

> [i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to

---

**2.** While Kraft correctly maintains that a claim for fraudulent misrepresentation may not be made based on a promise to take action in the future, "[a] statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of a fact." *Brentwater Homes, Inc. v. Weibley,* 471 Pa. 17, 23, 369 A.2d 1172 (1977).

which he is entitled under the provision of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which a participant may become entitled under the plan. . . .

Because Redick does not claim that he was terminated "for exercising any right" under the 401K Plan, the court interprets Count III as alleging that Kraft terminated Redick's employment for the purpose of interfering with his right to make contributions to the 401K Plan during the notice period.

As noted, Redick was not eligible to receive matching contributions from Kraft to the 401K Plan. Further, he was not scheduled to become eligible for such employer contributions at any time prior to January 6, 1989, the date he intended to leave Kraft. Rather, plaintiff was merely entitled to specify that a percentage of his salary would be contributed to the plan from pre-tax dollars. Redick's participation in the 401K Plan did not obligate Kraft to provide any additional pension benefit to him. Kraft clearly would not have an economic motivation to terminate Redick's employment because of contributions to the 401K Plan.

■ To establish a *prima facie* case under ERISA § 510, "an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any pension right to which the employee may become entitled." *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir.1987), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). "The essential element of proof under section 510 is specific intent to engage in proscribed activity." *Gavalik*, at 851. Because proof of specific intent to interfere with an employee's pension benefits will rarely be proved by direct evidence, the plaintiff may establish a violation of § 510 through the introduction of circumstantial evidence. *Gavalik*, at 852.

■ In *Gavalik*, the Third Circuit held that in ERISA discrimination cases, like employment discrimination claims under Title VII, 42 U.S.C. § 2000e, the shifting burdens analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), should apply. Consequently, plaintiff has the initial burden of establishing a *prima facie* case by a preponderance of the evidence. Once plaintiff has done so, a presumption of discriminatory intent arises and the burden of production shifts to the employer to introduce "admissible evidence of a legitimate nondiscriminatory reason for its challenged actions." *Gavalik*, at 853. If the employer fails to introduce evidence of a legitimate nondiscriminatory reason for its actions and thereby fails to rebut the presumption of discrimination that arises from the plaintiff's *prima facie* case, the court must enter judgment in favor of the plaintiff. *Id.* If the employer meets its burden of production and produces evidence of a legitimate nondiscriminatory reason for its action, "the presumption drops form the case and the [plaintiff] is afforded the opportunity to demonstrate that the employer's articulated reason is pretextual. . . ." *Id.*

■ To make out a *prima facie* case of an ERISA violation through circumstantial evidence, a plaintiff "must only demonstrate (1) that he was a candidate for a benefit protected by ERISA; (2) that he was denied that benefit; and (3) that he satisfied the conditions for receiving that benefit." *Furcini v. Equibank, N.A.*, 660 F.Supp. 1436, 1442 (W.D.Pa.1987) (Aldisert, J., sitting by designation). On the record before the court, Redick was arguably a candidate for a benefit protected by ERISA (the right to contribute to and thus derive benefit from the § 401K Plan) and was denied that benefit because of his termination. The record does not support a finding that Redick "satisfied the conditions" for receiving such a benefit. Redick was an at-will employee and was only entitled to make contributions to the § 401K Plan while employed by Kraft. Because the record does not support a finding that Kraft was obligated to employ Redick for the two weeks following his notice of resignation, he had not satisfied the conditions

necessary to entitle him to participate in the § 401K Plan.

Moreover, "Congress enacted Section 510 primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining *vested* pension rights.'" *Gavalik,* at 851 (*quoting West v. Butler,* 621 F.2d 240, 245 (6th Cir.1980)). In the case *sub judice,* there was no vested pension right for Kraft to interfere with or prevent Redick from obtaining. Because Redick's termination was the direct result of the resignation he submitted to Kraft, Redick's "loss" of pension benefits was merely incidental to his termination. As the Third Circuit acknowledged, "[p]roof of incidental loss of benefits as a result of termination will not constitute a violation of § 510." *Gavalik,* at 851.

■■■ Because plaintiff has not produced the evidence necessary to establish a *prima facie* case, summary judgment in favor of Kraft is appropriate. Even if plaintiff had established a *prima facie* case, Kraft has submitted uncontradicted evidence that the termination of Redick was in response to Redick's tendered resignation and pursuant to a policy of promptly severing employees planning to work for competitors. This legitimate and nondiscriminatory reason for Redick's termination rebuts any presumption in favor of discriminatory intent. Redick has produced no evidence to suggest that Kraft's articulated reason for the termination is pretextual. Redick acknowledges that he submitted his resignation to Kraft and informed his superiors that he would be going to work for a competitor in the near future.

Based on the foregoing, the court concludes that Kraft is entitled to judgment as a matter of law on Count III of the complaint.

#### C. *Plaintiff's WPCL Claim*

■■■ Count IV of the complaint contains a claim under the WPCL for wages and liquidated damages. 43 Pa.Stat.Ann. § 260.10. The WPCL entitles an employee to bring a claim for wages, fringe benefits or wage supplements that have been "earned" and wrongfully withheld by an employer. A bonus of the type provided under the Kraft Incentive Plan qualifies as "wages" or "supplements" as defined in the WPCL. *See* 43 Pa.Stat.Ann. § 260.2a (West Supp.1990).

To be "earned," the right to a wage or bonus must have vested under the terms of employment. *Stebok v. American General Life and Acc. Ins. Co.,* 715 F.Supp. 711, 713 (W.D.Pa.1989), *aff'd,* 888 F.2d 1382 (1989). Because plaintiff clearly had no right to two weeks of salary for the notice period or a bonus under the Incentive Plan on December 22, 1988, the bonus claimed was not "earned" as a matter of law. That the defendant's agents may have entered into an oral agreement to obtain a bonus for plaintiff in return for his providing information of value to Kraft would not render such a bonus an "earned" salary supplement within the meaning of the WPCL. Indeed, if plaintiff had "earned" a bonus and already had a right to it on December 22, 1988, the offer to pay a bonus could not and would not constitute consideration for the alleged independent oral contract on which plaintiff relies in Count I.

Accordingly, summary judgment in favor of the defendant will be entered on plaintiff's WPCL claim.

#### D. *Plaintiff's Wrongful Discharge Claim*

■■■ In his brief in opposition to the motion for summary judgment, plaintiff argues that he should be permitted to amend his complaint to assert a claim for wrongful discharge, and thereafter filed a motion for leave to amend.

It is well established under Pennsylvania law that "absent a statutory or contractual provision to the contrary ... either party [may] terminate an employment relationship for any or no reason." *Geary v. United States Steel Corp.,* 456 Pa. 171, 175–176, 319 A.2d 174 (1974). An employer may determine, without any fair hearing to an at-will employee, that the employer simply wishes to be rid of him. *Darlington v.*

*General Electric*, 350 Pa.Super. 183, 210, 504 A.2d 306 (1986). An employer's right to terminate an at-will employee has been characterized as "virtually absolute." *O'Neill v. ARA Services, Inc.*, 457 F.Supp. 182, 186 (E.D.Pa.1978).

Pennsylvania law does recognize, however, a nonstatutory cause of action for wrongful discharge from employment-at-will, but only in the quite narrow and limited circumstances where the discharge violates a significant and recognized public policy. *Geary, supra; Darlington, supra.* Such a public policy must be "clearly mandated" and of a type that "strikes at the heart of a citizen's social right, duties and responsibilities." *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894, 899 (3d Cir. 1983). *Geary* signals a "narrow rather than expansive interpretation of the public policy exception." *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 918 (3d Cir.1982). Public policy exceptions "have been recognized in only the most limited of circumstances." *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 89, 559 A.2d 917 (1989).

Plaintiff contends that his termination violated public policy. The "public policy" on which plaintiff relies is that purportedly reflected by the WPCL. This contention is unavailing. For the reasons set forth above, plaintiff cannot sustain his WPCL claim and therefore the statute is not implicated in this case. Moreover, while the policy in favor of paying one what he has earned is highly desirable, it is not one that "strikes at the heart" of our social structure. Virtually every statute reflects a public policy judgment about the rights and responsibilities of our citizenry. To extract a public policy exception to the at-will employment doctrine from each statute would effectively eviscerate that doctrine. *Durham v. Fleming Companies, Inc.*, 727 F.Supp. 179, 182 (E.D.Pa.1989), *aff'd*, 897 F.2d 521 (3d Cir.1990). Further, there are no allegations or evidence of record to suggest that plaintiff was terminated for exercising a right secured by the WPCL. *Id.* at

181. Even under plaintiff's theory, he was terminated *and* deprived of a benefit allegedly earned and owed.

Plaintiff also alleges in his proposed amended complaint that defendant terminated him with a specific intent to harm him. He contends that because his termination deprived him of a bonus and two weeks of salary, a specific intent to harm him can be inferred.

Courts applying Pennsylvania law have implied or assumed the existence of a specific intent to harm exception to the employment-at-will doctrine. *See, e.g., Sugarman v. RCA Corp.*, 639 F.Supp. 780, 785 (M.D.Pa.1985); *McNulty v. Borden*, 474 F.Supp. 1111, 1119 (E.D.Pa.1979); *Tourville v. Inter–Ocean Insurance Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986), *appeal denied*, 514 Pa. 619, 521 A.2d 933 (1987). More recently, however, there is serious doubt about whether any such exception exists. *See Mann v. J.E. Baker Co.*, 733 F.Supp. 885, 890 (M.D.Pa.1990); *McWilliams v. AT & T Information Systems, Inc.*, 728 F.Supp. 1186, 1193 (W.D.Pa.1990); *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346, 348 (1990).

Even assuming that a specific intent to harm exception exists, such an intent cannot be established by the harm normally occasioned by the act of discharging an employee. *Tourville, supra*, 353 Pa.Super. at 56 n. 5, 508 A.2d 1263. Any such exception would apply only in cases of purely malevolent conduct, that is, a termination for which no reason existed other than "an atavistic desire to hurt another." *Id.* at 57, 508 A.2d 1263.

The uncontroverted facts in this case compel a finding that Kraft had a "plausible and legitimate reason" for terminating employees, like plaintiff, with access to proprietary and confidential information about to embark on employment with a competitor. *Cisco v. United Parcel Services, Inc.*, 328 Pa.Super. 300, 476 A.2d 1340 (1984).[3]

---

**3.** The immediate termination of an employee who resigned with several weeks' notice to join a competitor with a consequential loss of commissions has been held to be insufficient to support a wrongful discharge claim. *See Sendi*

Because plaintiff's proposed amendment would be futile, his motion for leave to file an amended complaint will be denied. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

### E. *Sanctions*

Kraft also seeks sanctions against Redick under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. Kraft contends that the allegation in plaintiff's complaint that he had not yet accepted employment with LaBatt on December 21, 1988 was knowingly false. For the reasons already noted, the record falls just somewhat short of substantiating this to justify Rule 11 sanctions. Kraft also seeks sanctions for plaintiff's filing of his motion for leave to amend. The court finds that, at the time it was proffered, plaintiff's wrongful discharge claim was not so clearly unwarranted as to require Rule 11 sanctions. To obtain sanctions under § 1927, a showing of bad faith is required. *See Baker Industries v. Cerberus, Ltd.,* 764 F.2d 204, 208 (3d Cir.1985). The defendant has not made a sufficient showing of bad faith on the part of plaintiff or his counsel to justify imposition of § 1927 sanctions at this time.

## V. *CONCLUSION*

Because the court finds that Kraft is entitled to summary judgment with respect to Redick's salary and ERISA claims, the court will grant in part and deny in part Kraft's motion for summary judgment. Plaintiff's motion for leave to amend will be denied, as will defendant's motion for sanctions.

Appropriate orders will be entered.

*v. NCR Comten, Inc.,* 619 F.Supp. 1577 (E.D.Pa.     1985), *aff'd,* 800 F.2d 1138 (3d Cir.1986).