**YORK EXCAVATING COMPANY, INC., Plaintiff,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, Defendant**

v.

**EASTERN CONSOLIDATED UTILITIES, INC., et al., Defendants.**

No. CV–91–1037.

United States District Court, M.D. Pennsylvania.

Oct. 21, 1993.

---

1. Plaintiff's pending motion to compel turnover of funds is not affected by this order.

Audrey E. Woloshin, York, PA, for plaintiff.

K. Gerard Amadio, Venzie Phillips & Warshawer, Philadelphia, PA, Donald G. Douglass, Scranton, PA, for defendant Employers Ins. of Wausau.

Mitchell R. Leiderman, Media, PA, for third-party defendants Eastern Consol. Utilities, Inc., et al.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiff York Excavating Company, Inc. (York) filed this action to recover on a labor and material payment bond purportedly issued by Employers Insurance of Wausau (Wausau) in connection with an apartment complex construction project known as the Green Hill Project and located in Susquehanna Township, Dauphin County, Pennsylvania.[1] Green Hill Associates (GHA) was the project developer and the original owner.

When problems arose on the Green Hill Project between the developer and the general contractor, Susquehanna Construction Company (Susquehanna), Susquehanna defaulted on its contract with the developer prior to completion of the project. Eastern Consolidated Utilities (Eastern) was then hired to replace Susquehanna and complete the project. Pursuant to a contract with GHA signed July 20, 1987, Eastern agreed to complete the site work (the installation of interior roadways, parking areas and driveways, among other things) and agreed to perform all of the work and furnish all materials, labor, and equipment necessary to complete such work.

To secure payment of its subcontractors, Eastern obtained a labor and material payment bond (Bond # 1150–13–052625) in the amount of $3 million from Wausau as surety naming GHA as owner.[2] The bond was signed and purportedly issued under the authority of Wausau's agent, Daniel Culnen as attorney-in-fact. It bore the co-signature of "Adams". Subsequent events revealed that Culnen had issued the bond without authority. Although he was an agent of Wausau, he had no authority to issue the bond shown to York.

York entered into two written contracts with GHA/Tudor Development Corporation on October 15, 1987 to perform site work at the project. It is suing to recover in this action for work performed under the two written contracts with GHA and under the terms of an alleged oral agreement with GHA and Eastern entered into in August, 1987 to perform repair work and general contractor work on the project on a time and material basis. (Plaintiff's amended complaint, paras. 13–16) (See also: Record document no. 39, exhibit "F", Wausau's Statement of Undisputed Facts, paras. 5–10, and Record document no. 44.)

York alleges that it is owed $8,480.70 for work performed on the interior road ways of the project (under the first written agreement with GHA); $1,980.00 for work performed on the interior parking area (under the second written agreement with GHA); and $131,424.50 for repair work and general contractor work performed under the alleged oral contracts with Eastern and GHA. (Plaintiff's amended complaint, paras. 18–21 and 26–28). It also seeks to recover lost profits and overhead expenses incurred under the two written agreements with GHA in the amount of $76,440.00.

York bases its claim that an oral agreement existed on the following. Eastern actively participated in negotiations with GHA and approved York as a subcontractor for the project. It also supervised York's work on the project, both directly through its employees and indirectly through the management company, Construction Management Corporation (CMC), which it retained, to serve as

---

1. Disputes arising out of the Green Hill Project were the subject of another action filed before this court, *Tudor Development Group, Inc. v. United States Fidelity & Guaranty Company*, Civil No. 88–0758 (M.D.Pa.). See 968 F.2d 357 (3d Cir.1992). That case is now concluded.

2. A copy of the bond is attached to plaintiff's amended complaint as Exhibit "A".

construction manager until Eastern was in a position to manage the project itself, and issued work orders and change orders directed to York. York also cites the method of payment as proof that a contractual relationship existed between it and Eastern. On one occasion, a check drawn on GHA's accounts made payable to Eastern was endorsed in blank by Eastern and turned over to York as payment for its work on the project. Finally, when York requested proof that it would be paid for the work performed, it was shown the payment bond purportedly issued by Wausau under which it now sues.

On April 14, 1988, York submitted a claim to Wausau under the labor and material payment bond issued for the project. Wausau refused payment on the ground that no valid or authorized bond existed for the Green Hill project.[3] In a letter dated April 26, 1988, Wausau denied York's claim under the bond on the ground that no valid or authorized bond existed for the Green Hill project. Based on that denial, York made no further effort to recover against Wausau until approximately June, 1991, when it learned that a bond for the project had, in fact, been issued over Culnen's signature.

York was not paid for all work performed on the project. This action is one of several filed by York to recover for all work performed on the Green Hill Project. York filed this action against Wausau on August 12, 1991 seeking to recover sums allegedly still owed by Eastern for work performed on the project—totalling $141,887.20, as well as $76,440.00 for lost profits and overhead expenses, a total of $218,327.20. York also seeks punitive damages from Wausau for its alleged gross negligence and willful misconduct in denying York's claim under the bond.

Wausau filed a third party complaint containing five counts on January 29, 1992.[4] Counts I and II allege claims for indemnification against a number of individuals and corporations whom Wausau alleges have a contractual and common law obligation to indemnify it for any loss or expense it incurs as a result of this action (Counts I and II).

Counts III and IV allege claims of indemnification and fraud against Culnen and the firm of Culnen & Hamilton based on their alleged complicity in issuing an unauthorized bond in Wausau's name. Count V alleges an indemnification claim against Sidney Cohen, Dorothy Cohen, Marc Cohen, and Tudor and GHA on the basis of alleged fraudulent and/or negligent misrepresentations made in connection with issuance of the bond.

Named as third party defendants are: Eastern Consolidated Utilities, Inc. (Eastern); Mid–Atlantic Pipeline, Inc. (Mid–Atlantic); Eastern Excavating, Inc. (Eastern Excavating); John L. Daddona, Sr.; Judy A. Daddona; Eva Daddona; Daniel J. Culnen (Culnen); Culnen & Hamilton, Inc., (Culnen & Hamilton); Green Hill Associates (GHA); Tudor Development Group, Inc., (Tudor).

The case is before the court on motions for summary judgment filed by the defendant and all third-party defendants. The parties' motions were filed to: 1) Record Document No. 37, by Wausau; 2) Record Document No. 49, by Eastern and other third party defendants; and 3) Record Document No. 43, by third party defendants Culnen and Culnen & Hamilton, who join in Wausau's motion for summary judgment.

For the reasons discussed below, we will enter an order: 1) granting in part the motion for summary judgment filed by Wausau; and 2) denying as moot the motion for summary judgment filed by Eastern and other third party defendants. Summary judgment will be granted in favor of Wausau and against York on York's claim for sums allegedly owed for work performed and expenses incurred under the two written agreements with GHA and under the alleged oral contract with Eastern and GHA. Defendants' motion is denied in all other respects. York's claim against Wausau for fraud and Wausau's indemnification claims against Culnen and Culnen & Hamilton remain.

## DISCUSSION

### *Summary judgment standard*

Summary judgment is appropriate if the "pleadings, depositions, answers to interroga-

---

**3.** These allegations are set forth in plaintiff's amended complaint filed December 16, 1991 (Record Document No. 11).

**4.** Record document no. 15.

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 323 and 325, 106 S.Ct. at 2548 and 2554.

■ Issues of fact are " 'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–94 (3rd Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3rd Cir.1988).

## Statute of limitations

Wausau seeks summary judgment on York's claims for fraud and payment under the bond on the grounds that both are barred by the applicable state statute of limitations. Pennsylvania law clearly applies.

■ Choice-of-law decisions are governed by the choice-of-law rules of the forum state. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In this instance, Pennsylvania choice-of-law rules require application of Pennsylvania law. The Green Hill project is located in Dauphin County, Pennsylvania. All contractors and entities involved with the project are located here. No other state has significant, relevant ties to the matters giving rise to the cause of action. Although the payment bond was issued in New Jersey, all relevant events, e.g., the work performed, took place in Pennsylvania. No other state has any contact with the events giving rise to either this action or the state court action. *Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964).

Under Pennsylvania law, the statute of limitations for claims based on a payment bond is one year and, for claims of fraud, two years. 42 Pa.Cons.Stat.Ann. § 5523(3) and 5524(7). The limitations period is calculated from the date the cause of action arose. 42 Pa.Cons.Stat.Ann. § 5502(a).

York's work at the site was concluded by November, 1987 at the latest. When payment was not forthcoming, York contacted Wausau in April, 1988 and demanded payment under the bond signed by Culnen. Wausau refused payment on the ground that the bond was issued improperly and was invalid.

This information was conveyed to York by Wausau in a letter dated April 26, 1988 from Steven D. Robinson, Esq., Bond Claim Attorney for Wausau. The letter, addressed to Leslie Stewart, President of York, stated:

> EMPLOYERS INSURANCE OF WAUSAU A Mutual Company has conducted an initial investigation into the existence of an EMPLOYERS INSURANCE OF WAUSAU A Mutual Company bond for the

Greenhill [sic] Apartment project. We have ascertained that no valid or authorized bond exists for that project. Given no bond exists, EMPLOYERS INSURANCE OF WAUSAU A Mutual Company denies any obligation to you.

Please inform us how you obtained a copy of this unauthorized and invalid bond. We request this information only for the purpose of continuing our investigation into this matter.

This action was not filed until August 12, 1991, well beyond both the one year and the two year statute of limitations. York does not dispute applicability of the statute of limitations, but argues that the statute was tolled by the fraudulent misrepresentations of Wausau's agent, Daniel J. Culnen.

Fraudulent misrepresentations by a defendant or its agent toll the statute of limitations if

the defendant, through fraud or concealment, causes the plaintiff to relax his or her vigilance or to deviate from the right of inquiry ... In general, this requires that a defendant has done something amounting to an affirmative inducement to plaintiff to delay bringing the action.

*Gravinese v. Johns–Manville Corporation,* 324 Pa.Super. 432, 471 A.2d 1233, 1238 (1984).

In applying this doctrine, the Pennsylvania courts have not "required fraud 'in the strictest sense encompassing an intent to deceive, but rather fraud in the broadest sense which includes an unintentional deception.'" *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 556 (3d Cir.1985), quoting *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 204 A.2d 473, 476 (1964). However, "[m]ere mistake, misunderstanding or lack of knowledge is insufficient" and the "burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." *Molineux v. Reed,* 516 Pa. 398, 532 A.2d 792, 794 (1987).

If "'through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry,' the defendant is estopped from invoking the bar of the statute of limitations." *Id.* 532

A.2d at 794, quoting *Schaffer v. Larzelere,* 410 Pa. 402, 189 A.2d 267, 269 (1963).

■ . Culnen held himself out as Wausau's agent with its knowledge and authorization. "A principal is liable for the acts of its agent committed in the scope of its employment even though the principal did not authorize the act." *Pennsylvania National Mutual Casualty Insurance Co. v. Insurance Commissioner,* 121 Pa.Cmwlth. 618, 551 A.2d 368, 373 (1988). Wausau is, therefore, liable for any misrepresentation made by Culnen with apparent authority as its agent.

■ York contends that it did not attempt to pursue a claim on the bond because, due to the misrepresentations of Culnen, it had believed that there was no valid labor and payment bond in existence to cover the claims of Eastern's subcontractors, and that it was not until June, 1991, that it learned otherwise, when information about Culnen's alleged involvement in fraudulent bond transactions came to light.

Under the circumstances, Wausau is estopped from asserting the statute of limitations as a statutory bar to York's claim. Based on Wausau's unqualified denial of the existence of a valid or authorized bond for the project, York made no further attempt to assert a claim against Wausau until it learned that a bond had in fact been issued over Culnen's signature. Cf. *Firestone & Parson, Inc. v. Union League of Philadelphia,* 672 F.Supp. 819, 822 (E.D.Pa.), *aff'd without opinion,* 833 F.2d 304 (3d Cir.1987).

Wausau advised York in no uncertain terms that no valid bond existed and that it had no claim. Under the circumstances, York's decision not to file suit was entirely justifiable. Any other course of action would have been unreasonable. It would have been irresponsible to file suit on a bond which it had been informed by the purported issuer did not exist and had never been issued. Moreover, when York learned, from sources other than Wausau, that a payment bond had, in fact, been issued to Eastern, it promptly filed an action asserting its right to payment for work done at the GHA project.

### Fraud claims

The statute of limitations defense is the only ground asserted for grant of summary judgment on York's fraud claim against Eastern. Since we reject that defense, Eastern's motion for summary judgment on those claims will be denied. The motion of third party defendants Culnen and Culnen & Hamilton will, likewise, be denied for the same reason. Counts III and IV of Wausau's third party complaint, therefore, remain in the case.

### Proper claimant

Wausau asserts a second ground for grant of summary judgment on York's claim under the payment bond. It asserts that York is not a proper "claimant" as defined by the payment bond since it furnished labor and materials pursuant to contracts with GHA, not the bond principal, Eastern.

 We reject York's argument that · Wausau is estopped from raising the claimant argument because in the April, 1988 letter denying liability, Wausau did not raise this issue. Failure to assert all potential defenses at that time does not operate as a waiver. Additionally, as Wausau correctly points out, it had no reason at that time to consider, or state in its letter to York, other possible grounds for denying liability, since it was denying York's claim on the ground that no valid bond existed.

We note in passing that we agree with York's contention that there is no inconsistency between the position taken in this action and that taken in other litigation to recover for work performed on the Green Hill Project and that judicial estoppel has no bearing on the issues. York is contending that it had an oral contract with both Eastern and GHA in addition to the written contracts it entered into on October 15, 1987 with GHA.

### Alleged oral contract ·

York seeks payment under two sets of contracts: 1) two written contracts entered into with GHA/Tudor Development Corporation on October 15, 1987 to perform site work at the project; and 2) an alleged oral agreement with GHA and Eastern entered into in August, 1987 to perform repair work and general contractor work on the project on a time and material basis. (Plaintiff's amended complaint, paras. 13–16, 18–21 and 26–28). We address first its claim for payment under the alleged oral contract.

To recover from Wausau, York must establish entitlement to payment under the terms of the payment bond. The payment bond defines a claimant as:

> ... one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil gasoline, telephone service or rental of equipment directly applicable to the Contract.

(Plaintiff's amended complaint, exhibit "A"). The "Principal" named in the bond is Eastern. According to plaintiff's allegations in the complaint, the contract work for which York now seeks payment was done pursuant to a contract with GHA to which Eastern was not a party.

 To establish that it had an oral contract with Eastern to perform the site work for which it now seeks payment, York must show that: 1) both parties manifested an intention to be bound by the terms of the agreement; 2) the terms of the agreement were sufficiently definite to be specifically enforced; and 3) there was mutuality of consideration. *Redick v. Kraft, Inc.,* 745 F.Supp. 296, 300 (E.D.Pa.1990) (applying Pennsylvania law). The requirement of consideration is satisfied if there was a benefit conferred on the promisor or a detriment to the promisee and "an act, forbearance or return promise bargained for and given in exchange for the original promise." *Channel Home Centers, Grace Retail v. Grossman,* 795 F.2d 291, 299 (3d Cir.1986).

 "The existence and terms of an oral contract must be established by clear and precise evidence." *Redick, supra,* 745 F.Supp. at 300. Whether a contract exists is a factual issue for the trier of fact to determine unless there is no genuine issue of material fact.

■■■■■ Eastern protests York's reliance on evidence of the facts and circumstances surrounding its work on the project as a violation of the parol evidence rule. The parol evidence rule bars the admission of evidence to vary or alter the forms of an unambiguous written contract. *Project Development Group v. O.H. Materials,* 766 F.Supp. 1348, 1352 (W.D.Pa.1991). It does not bar the introduction of evidence to prove the existence of an oral contract.

Here, the parties do not disagree on the material facts. They disagree only on the legal conclusions to be drawn from the facts, i.e. the existence or non-existence of an oral contract.

As proof of the existence of a contractual relationship with Eastern, York cites the following facts, all of which are undisputed, except where otherwise indicated:

5. From on or about August, 1987 to November, 1987, York claims to have performed certain work on the Green Hill Project on a time and material basis for which claim is made in this civil action.

. . . .

6. Whenever such time and material work was ordered, York prepared a preprinted form styled as a "Job Work Order", each of which stated that the work should be billed to "Green Hill Associates".

. . . .

7. Whenever such time and material work was performed, York prepared an invoice stating that the work had been "SOLD TO" "Green Hill Associates" and mailed that invoice to Green Hill Associates' post office address.

. . . .

8. On October 15, 1987, York entered into [a] written agreement with "Green Hill Associates/Tudor Development Corporation" to perform certain work in connection with the installation of certain interior roadways on the Green Hill Project. . . . [York qualifies this statement by adding, by way of further response: "Eastern . . . participated in the negotiation of the agreement, approved the hiring of York as a subcontractor on the project and treated York as its subcontractor."]

9. On October 15, 1987, York entered into [a] written agreement with "Green Hill Associates/Tudor Development Corporation" to perform certain work in connection with the installation of certain interior parking areas and driveways on the Green Hill Project. . . . [York qualifies this statement by adding, by way of further response: "Eastern . . . participated in the negotiation of the agreement, approved the hiring of York as a subcontractor on the project and treated York as its subcontractor."]

. . . .

10. Whenever work was performed under either of the October 15, 1987 contracts [between York and Green Hill Associates/Tudor Development Corporation], York prepared an invoice stating that the work had been "SOLD TO" "Green Hill Associates" and mailed that invoice to Green Hill Associates' post office address. (Record document no. 39, exhibit "F", Wausau's Statement of Undisputed Facts, paras. 5–10, and Record document no. 44. References to supporting documents omitted.)

■■■■■ None of the facts on which York relies establishes the existence of an oral contract with Eastern to perform site work on the project. There is nothing which tends to show mutual assent to enter into a contract. Eastern's presence at negotiations between York and GHA does not establish that it was a party to the contract. Its presence was, in fact, logical and entirely consistent with its role as construction manager/supervisor. GHA hired Eastern as general contractor after Susquehanna departed. Nor does a right of control or supervision over York establish the existence of a contractual obligation. Not every right to control or supervise activities of another gives rise to an inference of a contractual obligation between the two. If that were so, all supervisors would be deemed to have a contractual obligation to the individuals and entities under their supervision. From the undisputed facts, it is clear that Eastern served as a central clearinghouse for work orders, oversaw the overall project, and coordinated work of the various contractors at the site. See: *Redick, supra,* 745 F.Supp. at 300.

Finally, no consideration passed between Eastern and York. While York also contends that it was paid by Eastern for work performed at the Green Hill Project, that contention is not borne out by the facts and documentation submitted.[5] The evidence regarding the manner in which payment was handled, specifically the two checks which passed from Eastern to GHA is ambiguous, at best. Even under the most favorable interpretation to York this evidence does not show that York was paid with funds belonging to Eastern. It shows, at most, that Eastern was sometime used as an intermediary for funds paid by GHA to York.

The only evidence offered which does tends to show that the parties contemplated that Eastern would be a party to York's contract to perform the site work is irrelevant to the claim that an oral contract existed. In an affidavit filed by York, John W. Meyers, a stockholder in CMC, states, *inter alia*, that: 1) GHA instructed him to negotiate an agreement with York for the excavation work and told him to include Eastern as a signatory on the written contract; 2) Eastern approved York's hiring; and 3) the intention was that Eastern would be a party and signatory to York's contract with GHA, and this did not come about due to "an administrative oversight".

The difficulty with this evidence is that Meyers' statements do not relate to the claim we understand York to be asserting in this action—i.e. a claim for recovery under a purported oral contract with both Eastern and GHA, separate and apart from the written contracts entered into with Eastern alone on October 15, 1987.

### Non-party to written contracts

■ York's attempted recovery against Wausau for work performed under the two written contracts is barred by the fact that Eastern is not a party to either contract. None of the evidence proffered establishes that it was in fact a party to either or raises a genuine issue of material fact on that question.

■ The parol evidence does apply to this issue, to bar the admission of any evidence offered to vary or alter the terms of York's written contracts with GHA, which is precisely the intended effect of Meyers' affidavit statements to the effect that the failure to make Eastern a signatory was an administrative oversight.

### Alleged reliance

■ Finally, York's reliance on the production of the payment bond in response to its request for assurance of payment does not bear on any element necessary to prove the existence of a contract. Nor can such reliance be the basis for any right of recovery against Wausau. Either GHA or Eastern provided York with the bond as assurance of payment. Neither had any authority from Wausau, either actual or apparent, to act as its agent in altering or expanding the terms of the payment bond. Hence, neither had the capacity to change or extend any obligation owed by Wausau under the terms of the bond.

### Wausau's indemnification claims against third party *defendants*

Grant of judgment in favor of Wausau on York's claims under the bond renders moot Wausau's claims for indemnification against third party defendants for any loss it may suffer under the alleged bond. Judgment will, therefore be entered in favor of the third party defendants Eastern; Mid–Atlantic; Eastern Excavating; John L. Daddona, Sr.; Judy A. Daddona; Eva Daddona; GHA; Tudor; Sidney J. Cohen; Dorothy Cohen; and Marc Cohen, on Counts I, II and V of Wausau's third party complaint.

### ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. The motion for summary judgment filed by Employers Insurance of Wausau (Wausau), (Record Document No. 37) and joined in by third party defendants Culnen and Culnen & Hamilton (Record Document No. 43) is granted in part and denied in part.

2. Judgment is granted in favor of Wausau and against plaintiff York Excavating Company, Inc. (York) on York's claims for

---

**5.** See Record document no. 46, exhibits 2 and 3.

payment under the bond. York's claims of fraudulent representation against Wausau remain.

3. The foregoing grant of judgment in favor of Wausau renders moot Wausau's claims for indemnification against the third party defendants for any loss it may suffer under the alleged bond.

4. The motion for summary judgment (Record Document No. 40) filed by Eastern Consolidated Utilities, Inc. (Eastern) and other third party defendants is denied as moot.

5. All third party claims asserted by Wausau against the following third party defendants: Eastern; Mid–Atlantic Pipeline, Inc.; Eastern Excavating, Inc.; John L. Daddona, Sr.; Judy A. Daddona; Eva Daddona; Green Hill Associates; Tudor Development Group, Inc.; Sidney J. Cohen; Dorothy Cohen; and Marc Cohen, in Counts I, II and V are dismissed as moot.

6. York's claims against Wausau for fraudulent misrepresentation and Wausau's indemnification claims against Culnen and Culnen & Hamilton remain.

7. A revised scheduling order will follow.