121 Pa. Commonwealth Ct. 618 (1988)
551 A.2d 368
Pennsylvania National Mutual Casualty Insurance Company, Petitioner
v.
The Insurance Commissioner of the Commonwealth of Pennsylvania, Respondent.
No. 2773 C.D. 1987.
Commonwealth Court of Pennsylvania.
Argued May 26, 1988.
December 9, 1988.
Argued May 26, 1988, before Judges COLINS and SMITH, and Senior Judge KALISH, sitting as a panel of three.
*619 John C. Carlin, Jr., Mercer, Mercer, Carlin & Scully, for petitioner.
Richard J. Enterline, Assistant Counsel, with him, Theodie L. Peterson, III, Chief of Litigation and Linda J. Wells, Chief Counsel, for respondent.
OPINION BY JUDGE SMITH, December 9, 1988:
Petitioner, Pennsylvania National Mutual Insurance Company, appeals from an order of the Insurance Commissioner (Commissioner) affirming a January 21, 1987 order of the Insurance Department of the Commonwealth of Pennsylvania (Insurance Department) which found Petitioner to be in violation of Section 5(a)(9) of the Unfair Insurance Practices Act (Act)[1] and ordered Petitioner to cease and desist from terminating the homeowner's policy of Mary Herron (Herron) and refusing to honor her valid claims. The order of the Commissioner is affirmed.
Questions involved here are whether the Commissioner erred in finding that Petitioner violated Section 5(a)(9) of the Act for terminating or refusing to write a homeowner's insurance policy fourteen days after the policy application was taken by an agent, and in finding that a valid insurance policy was in effect.
*620 The Commissioner found that on May 22, 1986, Herron and her husband met with Kelly Moore (Moore), an insurance agent for Petitioner and an employee at the Rittle Insurance Agency (Rittle), to purchase a homeowner's insurance policy for their personal residence. Prior to the meeting, Herron received notice from Commercial Union that her existing homeowner's policy was cancelled because of a claim submitted by her as a result of a burglary on June 2, 1985.[2] Commercial Union, however, reversed its position and offered to renew the policy.
On May 22, 1986, Herron was advised by Moore that her home would be insured from the moment of payment. In reliance thereon, Herron did not renew her policy with Commercial Union but instead tendered a check for $204.00 to Moore in payment of a one-year premium and signed a policy application which was forwarded to Petitioner by Moore.
Moreover, there was an agency contract in effect between Petitioner and Rittle at all relevant times which gave Rittle authority to receive and accept proposals for insurance contracts subject to restrictions imposed upon the agent by law as well as by Petitioner's written instructions. Petitioner's written instructions provided that Rittle could not extend coverage to an applicant who incurred losses in the immediate past three years with the exclusion of only one loss due to natural causes not within the homeowner's control. The original policy application of Herron shows that although the binder section was checked and dated, it had been altered with *621 "wite-out" and the no-binder section had been checked. The Commissioner concluded that a contract of insurance was extended to Herron as of May 22, 1986, the date of application and payment of premium.
On May 30, 1986, the Herron home was completely destroyed by fire. On June 5, 1986, Herron was notified by Rittle that her application for insurance coverage was being denied due to her June 2, 1985 loss and that she therefore did not have coverage at the time of fire.
Herron filed a complaint with the Insurance Department which on January 21, 1987, after conducting an investigation, determined that Petitioner had violated Section 5(a)(9) of the Act. Petitioner filed an appeal with the Commissioner who affirmed the determination of the Insurance Department on November 5, 1987. Petitioner thereafter petitioned this Court for review.[3]
Petitioner initially argues that the Commissioner's conclusion that Petitioner violated Section 5(a)(9) of the Act for terminating or refusing to write a homeowner's insurance policy fourteen days after the application was taken by an agent is erroneous as a matter of law. Section 5(a)(9) defines unfair methods of competition and unfair or deceptive acts to include:
(9) Cancelling any policy of insurance covering owner-occupied private residential properties or personal property of individuals that has been in force for sixty days or more or refusing to renew any such policy unless the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard *622 assumed by the company; . . . No cancellation or refusal to renew by any person shall be effective unless a written notice of cancellation or refusal to renew is received by the insured either at the address shown in the policy or at a forwarding address. . . .
The Commissioner found that this particular provision of the Act had been violated based upon an interpretation of a regulation promulgated by the Insurance Department at 31 Pa. Code §59.9(b)[4] which imposes notice requirements for cancellation or termination of a policy. The Commissioner determined that Petitioner, by taking the position that there was no insurance policy in effect, failed to give Herron the required thirty days notice of termination and to provide notice in the proper form. The Commissioner further concluded that an insurer who cancels a homeowner's policy in force for less than sixty days must provide notice under 31 Pa. Code §59.9. Commissioner's Opinion, pp. 16-17, 19. Petitioner, however, contends that Section 5(c)(3) of the Act, 40 P.S. §1171.5(c)(3), clearly provides that Section 5(a)(9) does not apply to policies in effect for less than sixty days, including any notice of termination *623 period[5] and that the regulation relied upon by the Commissioner greatly expands the notice provisions set forth in the Act.
The record discloses that Petitioner is raising for the first time the issue of the applicability of Section 5(a)(9) of the Act. At the hearing before the Commissioner, the parties were advised that one of the issues to be determined was the applicability of Section 5(a)(9) to a policy which has been in effect for less than sixty days. Although Petitioner knew the issues to be addressed, it failed to contest the applicability of Section 5(a)(9). In the briefs filed by Petitioner before the Commissioner, the only issue addressed was whether the Herrons had a valid insurance policy with Petitioner. At that time, Petitioner argued that since Herron did not have a valid policy, it could not have violated the Act and even if it was determined that a valid policy existed, Petitioner would be precluded from accepting it because of alleged misrepresentation made by Herron regarding her failure to report the December 1984 claim.
Since Petitioner failed to contest before the Commissioner the applicability of Section 5(a)(9), the issue is deemed waived and cannot be raised on appeal. DeMarco v. Jones & Laughlin Steel Corp., 513 Pa. 526, 522 A.2d 26 (1987); Pa. R.A.P. 1551. Moreover, Petitioner is also precluded from challenging the validity of 31 Pa. Code §59.9(b). Although Petitioner claims that it *624 is not challenging the validity of the regulations but rather the expansion of the notice requirements, it is impossible to attack the expansion of a regulation without attacking its validity. In Tancredi v. State Board of Pharmacy, 54 Pa. Commonwealth Ct. 394, 421 A.2d 507 (1980), this Court held that a challenge to the validity of a regulation is waived if not raised before the administrative agency.
Petitioner next contends that the Commissioner's conclusion that a valid policy of insurance was in effect is also erroneous. Specifically, Petitioner challenges as not supported by substantial evidence the Commissioner's findings that Moore bound coverage and that the agency contract and underwriting guidelines did not prohibit agents from binding homeowner's coverage on an application where there had been a previous loss. Petitioner further challenges as error of law the Commissioner's conclusion that Petitioner could be bound by the ultra vires act of its agent.
Determination of whether the Commissioner's actual finding that Moore bound coverage depends on whether the binder section of the application had been altered before or after Herron signed the application. The Commissioner, based upon Herron's testimony, found that Moore placed a checkmark in the box indicating coverage was bound with an effective date of May 22, 1986 at the time Herron signed the policy application. The Commissioner further found that subsequent to obtaining Herron's signature, Moore altered the application by "witing-out" the check mark indicating coverage was bound effective May 22, 1986. Findings of Fact Nos. 1822. The Commissioner disbelieved that such an important item as binder of coverage was "wited out" prior to Herron's signature and that any responsible agent would have prepared another application, or at least, obtained the applicant's initials approving the change. Commissioner's Opinion, p. 12.
*625 Petitioner asserts there is nothing to support the Commissioner's conclusion except the uncorroborated testimony of Herron which was supported by her husband. However, the Commissioner's findings represent credibility determinations, which, as a matter of administrative law, cannot be reviewed on appeal. B.G. Balmer & Co. v. Insurance Commissioner, 114 Pa. Commonwealth Ct. 239, 538 A.2d 968 (1988). Moreover, a reviewing court cannot substitute its judgment for that of the Commissioner unless the Commissioner's determination is not supported by substantial evidence. Schartz v. Insurance Commissioner, 105 Pa. Commonwealth Ct. 336, 524 A.2d 544 (1987).
The record discloses that Moore twice assured Herron that she had coverage immediately upon payment of the premium. Moore testified that she assured Herron that although she could not bind coverage, she did not foresee a problem. N.T., p. 66. Nothing in the record demonstrates that Moore explained to Herron the significance of an unbound application. N.T., pp. 82-83. Further corroboration of Herron's testimony is provided by the fact that when calls were made to Rittle by friends of the Herrons requesting information as to the insurance claim, they were informed that the Herron home was covered. Finding of Fact No. 29. The record thus contains substantial evidence to support the Commissioner's findings.
Petitioner also argues that the Commissioner erred in concluding that Moore had authority to bind the risk described on Herron's application; and that it is not liable for the actions of Moore because she acted outside the scope of her authority. Petitioner cites Rauschenberger v. Mutual Benefit Fire Insurance Co., 363 Pa. 119, 69 A.2d 82 (1949) in support thereof. According to Petitioner, the agency agreement entered into between Rittle and Petitioner conferred limited authority on Rittle, and an agent could bind contracts subject only to *626 restrictions placed upon the agent by Petitioner. Since Herron's application showed one prior loss, a burglary, which did not fall within the natural loss exception, Petitioner claims it could not have provided coverage for Herron.
The record discloses that Petitioner lists the type of risks in its underwriting guidelines that agents are not authorized to bind. The type of risk that Herron presented is not included in that list. Commissioner's Opinion, pp. 13-14. Furthermore, as the Commissioner's opinion correctly noted, Rauschenberger is distinguishable from the instant case. In Rauschenberger, the Supreme Court determined that the agent only had authority to receive and accept proposals to the extent authorized by the company, but had no authority, express or implied, to bind coverage. Here, Petitioner's own guidelines gave agents authority to bind coverage in certain cases, but not in others. Findings of Fact Nos. 24-25. Petitioner cannot escape liability on the basis of the underwriting guidelines. See Collister v. Nationwide Life Insurance Co., 479 Pa. 579, 388 A.2d 1346 (1978), cert. denied, 439 U.S. 1089 (1979), where the Supreme Court held that a temporary contract of insurance occurred upon the insurer's acceptance of the application and premium payment and that coverage continued until insurer either rejected the application because of uninsurability or accepted the application and issued a policy.
A principal is liable for the acts of its agent committed in the scope of its employment even though the principal did not authorize the act. Aiello v. Ed Saxe Real Estate, Inc., 508 Pa. 553, 499 A.2d 282 (1985). Furthermore, undisclosed rules only known to an insurer and its agent cannot be invoked to defeat the very contract the agent had apparent authority to make. Serventi v. New York Fire Insurance Co., 253 F. Supp. 670 (1966). Moreover, the principal's liability is not limited *627 when a restriction is not communicated to a third party. Industrial Molded Plastic Products, Inc. v. J. Gross & Son, Inc., 263 Pa. Superior Ct. 515, 398 A.2d 695 (1979). Petitioner is therefore liable for Moore's actions as she had apparent authority to bind coverage and did not communicate any limitation on her authority to Herron. Nor is there any merit to the argument raised by Petitioner that Moore did nothing that would have led Herron to believe that Moore had authority to bind Petitioner, and that it was Herron's obligation to ascertain Moore's authority. If Herron did in fact have any obligation in this regard, the assurances she received from Moore discharged any such obligation. Bolus v. United Penn Bank, 363 Pa. Superior Ct. 247, 525 A.2d 1215 (1987).
Accordingly, finding no error of law, the order of the Commissioner is affirmed.

ORDER
AND NOW, this 9th day of December, 1988, the November 5, 1987 order of the Insurance Commissioner is affirmed.
Judge MacPHAIL did not participate in the decision in this case.
NOTES
[1] Act of July 22, 1974, P.L. 589, as amended, 40 P.S. §1171.5(a)(9).
[2] Herron also submitted a claim in December 1984 when her van was burglarized. As of June 2, 1985, Herron had not received payment for the December 1984 claim and therefore believed that both claims had been consolidated. Herron advised Moore that the claims were consolidated; and only the June 2, 1985 loss appears on the application. Findings of Fact Nos. 2-5, 15-16.
[3] This Court's scope of review is limited to determining whether or not constitutional rights were violated, errors of law were committed, or findings of fact are supported by substantial evidence. Seidman v. Insurance Commissioner, 110 Pa. Commonwealth Ct. 401, 532 A.2d 917 (1987).
[4] 31 Pa. Code §59.9(b) provides in relevant part that:

(b) The period of 60 days referred to in section 5(a)(9) and (c)(3) of The Unfair Insurance Practices Act (40 P.S. §1171.5(a)(9) and (c)(3)) is intended to provide to insurers a reasonable period of time, if desired, to investigate thoroughly a particular risk while extending coverage during the period of investigation. An insurer may cancel the policy provided it gives at least 30 days notice of the termination and provided it gives notice no later than the 60th day. The insurer's decision to cancel during this 60-day period must not violate section 5(a)(7)(iii) of The Unfair Insurance Practices Act (40 P.S. §1171.5(a)(7)(iii)).
[5] Section 5(c)(3) of the Act sets forth that:

(c) Nothing in subsection (a)(9) of this section shall apply:
. . . .
(3) To any policy of insurance which has been in effect less than sixty days, including any notice of termination period, unless it is a renewal policy. Any declination of coverage within the sixty-day period provided in this clause shall, for purposes of review by the insurance commissioner, be deemed a refusal to write and shall not be subject to the provisions of subsection (a)(9) of this section.