# Joyner v. Harleysville Insurance Company

*Claire D. Newman,* for plaintiffs.
*Paul A. Lockrey,* for defendant.

HERRON, *J.,* June 9, 1989 — This is an action involving a claim by plaintiffs for payment of basic loss benefits from an insurance policy they held with defendant, Harleysville Insurance Company, under the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.101 et seq. (repealed 1984, February 12, P.L. 26, §8(a), effective October 1, 1984). Plaintiffs seek these payments for injuries they sustained from an automobile accident that occurred on January 31, 1984. Both parties, through their counsel, have submitted to this court an agreed-upon statement of facts upon which they request an entry of judgment. A summary of the statement of facts follows.

In September 1982, plaintiff, Arnold Joyner, purchased automobile insurance under the "assigned risk" plan of the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.105, 75 P.S. §17. Plaintiff purchased this insurance through a licensed insurance broker in Philadelphia trading under the name Seers Insurance Agency.

Defendant, Harleysville Insurance Company, was selected under the plan as the servicing insurance carrier and issued an automobile insurance policy to plaintiff. Plaintiff's policy continued in force throughout 1982 and was renewed for an additional year in September 1983. Plaintiff made all of his

insurance premium payments in cash to Seers. More specifically, plaintiff paid Seers $165 in September 1983, $200 in November 1983, and $200 in December 1983. Seers was responsible for then forwarding plaintiff's payments via checks to Harleysville. During 1983, defendant sent plaintiff a total of three cancellation notices — the first was issued in September and the second in October for non-payment of premiums because Seers forwarded plaintiff's September 1983 premium payment to Harleysville in the form of a check which was returned for non-sufficient funds. In response to these notices, plaintiff, Arnold Joyner, contacted Seers in September and October and both times was assured that the cancellation notices had been issued in error and that his automobile insurance policy was in force. In October 1983, Harleysville eventually did rescind the September and October cancellation notices upon receipt of a replacement check from Seers in the amount of $165. The December 13 cancellation notice mailed to plaintiff was to take effect on January 1, 1984. In response to this notice, plaintiff again went to Seers' office and spoke with an unnamed person to whom he had given all of the aforementioned cash premium payments. In plaintiff's presence, this person purported to call Harleysville after which it was reported to plaintiff that the December 13 notice was issued in error and that plaintiff's policy was in effect. Apparently, however, a telephone call was not actually placed to Harleysville and the assurances given to plaintiff were false. As a result of the conversation with the Seers representative, plaintiff believed that all his premiums had been paid to Harleysville by Seers, that his policy was in effect, and that his next payment was due in February 1984.

When Harleysville did not receive payment for

premiums due from either plaintiff or Seers, it cancelled plaintiff's policy on January 1, 1984. On January 31, 1984, plaintiff, his wife, Ruth, and daughter were injured in an automobile accident in which all three sustained injuries which required medical treatment and resulted in medical bills totalling $16,313.40. When plaintiff attempted to report this accident to Seers, he learned that the agency had closed permanently. Plaintiff then gave timely and reasonable notice of the accident to Harleysville and on March 2, 1984 forwarded proof of the loss, its amount and all expenses incurred to that date. Defendant, Harleysville, responded by notifying plaintiff that his policy had been cancelled as of January 1, 1984 and that no payment for medical bills would be made. Plaintiffs then filed the instant action.

In general, absent some special condition or circumstance in the particular case, a broker is not the agent of an insurer and may not be converted into an agent of an insurer without some action on the part of the insurer, or the existence of some facts by which his authority to represent it may be fairly inferred. Couch on Insurance 2d §25:95. It is also the general rule, however, that an insurance broker acts as an agent for the insurer for the purpose of collecting and remitting the premium and delivering the policy to the insured. *Id.;* see *Transcontinental Oil Co. v. Atlas Assur. Co. Ltd.,* 278 Pa. 558, 123 Atl. 497 (1924); *Pearl Assur. Co. Ltd. v. National Insurance Agency Inc.,* 150 Pa. Super. 265, 28 A.2d 334 (1942).

While there are no Pennsylvania cases which have considered or discussed, in the context of an assigned risk plan, the liability of an insurer for the default of a broker, this problem was addressed in *Sands v. Granite Mutual Ins. Co.,* 232 Pa. Super.

70, 331 A.2d 711 (1974) which involved a dispute over uninsured motorist coverage. In *Sands,* the plaintiff-policyholder applied to a broker for automobile insurance, indicating that he desired to be "fully covered." The plaintiff signed a blank insurance application, trusting the broker to fill in all necessary information. The broker placed the insurance with defendant, Granite Mutual Insurance Company. However, despite plaintiff's request for full coverage, the broker did not procure uninsured motorist coverage for plaintiff. During the ensuing two years, plaintiff paid all premiums on the policy to the broker, who also processed a renewal of the policy for plaintiff at the end of the first year. Toward the end of the second year of the policy, plaintiff made an installment payment of the premium to the broker in order to renew the policy. Within two months plaintiff paid to the broker the entire balance due in full. The broker, however, neither forwarded plaintiff's application nor his payments to the insurance company. Plaintiff learned this when, several months after he made his final payment, he was injured in an automobile accident involving an uninsured motorist and sought payment under his policy. When the defendant-insurance company denied coverage, plaintiff brought suit. The *Sands* court held that the broker was authorized to receive premium payments from plaintiff. The court reasoned, therefore, that payment of the premium to the broker by plaintiff was good payment and bound the insurance company, even though the broker did not forward the premium or plaintiff's renewal application. This court finds the *Sands* holding to be persuasive and applicable to the instant case.*

---

* The court found neither *Taylor v. Crowe,* 444 Pa. 471, 282 A.2d 682 (1971) cited by plaintiffs, nor *Pearson v. Selected Risks Ins. Co.,*

In the instant case, plaintiffs had a relationship with Seers lasting over a period of two years and, similarly, Seers had a relationship with Harleysville. Plaintiffs at all times made timely payments of their insurance premiums to Seers which forwarded same to Harleysville during the first year of the policy beginning September 1982; moreover, at least one premium payment was forwarded to Harleysville in September 1983. Harleysville presumably benefited from these premiums. Seers also processed a renewal of plaintiffs' policy in September 1983 which Harleysville accepted. Harleysville, therefore, was well accustomed to dealing with Seers, and the court finds that Seers, at minimum, had apparent or implied authority to accept plaintiffs' premiums on behalf of Harleysville. When, in the latter part of 1983, Seers neglected to forward plaintiffs' premium payments to Harleysville in a timely fashion, Harleysville through the cancellation notices it mailed to plaintiffs failed to give plaintiffs adequate notice tailored to fuly alert them to the extent and amount of Seers' default. Despite this failure, plaintiffs responded to the cancellation notices by making inquiries at Seers. The court finds that plaintiffs reasonably relied on Seers' representations that the cancellation notices were wrongfully issued and that plaintiffs' policy remained in force since, in-

---

154 N.J. Super. 240, 381 A.2d 91 (1977) cited by defendant, dispositive of the instant case since both hold that an insurance company is not bound by a broker's representations to a policyholder regarding *substantive provisions of the policy*. But see, *Pa. National Mutual Casualty Insurance Co. v. Insurance Commissioner of Pa.*, 121 Pa. Commw. 618, 551 A.2d 368 (1988) (insurance company liable to plaintiff for agent's assurance to plaintiff that homeowner's coverage was in effect upon her signing policy application and paying premium). In the instant case, the question concerns the effect of a broker's default on the insurance company when plaintiff has timely paid premiums to the company.

deed, the September and October 1983 cancellation notices were rescinded by Harleysville.

As between plaintiffs and Harleysville, the latter was in a far better position to obviate Seers' default. Harleysville could have advised plaintiffs to forward their premium payment directly to the company, but this was never done. Since Seers was clothed with apparent authority to accept premiums, the payment to them by plaintiffs were good payments. As was said in 14 Appelman, Insurance Law Practice, §7982:

"The receipt of premiums by an agent appointed either expressly or by implication by the insurer to deliver the policy and collect premiums has been considered a receipt of such premiums by the insurer. The fact that such agent, authorized to collect premiums, fails to remit them to the insurance company, does not deprive the insured of his protection. *The majority rule seems to be that from the insured's point of view it is immaterial whether such agent fails to remit the premiums to the insurer until after the loss or at all;* if the insured was entitled to rely upon such agent's apparent authority to receive premiums, the payment is a valid one, irrespective of actual receipt by the company." (emphasis supplied)

Harleysville, having accepted the benefit of doing business in Pennsylvania and the benefit of plaintiffs' premiums paid over before Seers' default, will not now be heard to deny the burden of its contract with plaintiffs. Accordingly, plaintiffs are entitled to judgment in their favor and the court so orders.