**Edward MORAN, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 26, 2008.

Decided April 27, 2009.

Richard A. Estacio, Lancaster, for petitioner.

Teresa H. DeLeo, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

2. The procedural posture of this case is somewhat convoluted and is described succinctly in the Referee's Decision:

BEFORE: LEADBETTER, President Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Edward Moran (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) affirming the decision of the Unemployment Compensation Referee (Referee). In that decision, the Referee found that F.A. Bartlett Tree Expert Company's (Employer) appeal of the Lancaster Unemployment Compensation Service Center's (Service Center) determination was timely filed, and that Claimant committed willful misconduct by failing to follow Employer's established safety rules. Claimant argues that Employer's appeal was not timely filed because the only evidence of the appeal's date of mailing is a private postage meter mark, and the appeal was not received by the Unemployment Compensation Bureau (Bureau) within the time for appeal. Claimant also argues that his conduct only constituted negligence, and not willful misconduct, under Section 402(e) of the Unemployment Compensation Law (Law).[1]

Claimant filed for unemployment benefits on November 4, 2007. The Service Center granted Claimant's application for benefits on November 30, 2007. Employer mailed its Petition for Appeal to the Bureau's Employers' Charge Unit in an envelope with a private postage meter mark dated December 17, 2007. The Bureau received the Petition for Appeal on December 19, 2007.[2] A hearing was held before

The employer erroneously filed its appeal with the Employer's Charge Unit by letter dated December 17, 2007. In a subsequent letter dated January 3, 2008, the employer disputed a denial of relief from charges on the basis that its initial appeal had been

the Referee, who reversed the Service Center's determination. Claimant appealed the Referee's decision to the Board, which affirmed the Referee and made the following findings of fact:

1. The claimant last worked for F.A. Bartlett Tree Expert Co. as a tree climber from April 11, 2005, until November 8, 2007, in a full-time position at a final rate of pay of $20 an hour.

2. Prior to the final incident for which the claimant was discharged, the claimant received warnings for two separate incidents in which the claimant had failed to secure limbs that he was trimming in violation of the employer's policies.

3. The claimant was aware of the employer's policies and procedures regarding tree trimming and the handling of equipment, and the employer's policies are reviewed with its employees on a regular basis.

4. The final incident resulted from the claimant's failure to put on the emergency brake when parking on a customer's sloped driveway and failing to place a tire chock behind the wheel of the work truck.

5. The truck began rolling back, and the claimant tried to climb into the truck to stop it but was unable to do so before the truck jack-knifed and caused some damage to property and equipment.

6. The claimant admitted he felt that it was a big job and was in a hurry to complete the work within the required time.

7. The claimant returned to the truck to tell the foreman of the work situation and the truck started to move.

8. The employer's appeal was timely filed.

(Board Decision, Findings of Fact (FOF) ¶¶ 1–8). In its discussion, the Board stated that Employer's appeal was postmarked the last day of Employer's appeal period and was, therefore, timely even though Employer sent its appeal to the wrong office. The Board determined that Claimant committed willful misconduct in that he violated Employer's known work rules regarding safe procedures and is, therefore, ineligible for benefits pursuant to Section 402(e). Claimant now appeals to this Court.[3]

Claimant first argues that Employer's appeal was untimely because it was not received by the Bureau until December 19, 2007. Initially, we note that timeliness of

untimely filed. Although the employer's representative ... was scheduled to appear by telephone in the initial hearing in this matter, the representative did not appear, but the Referee discovered in the companion case related to the employer's request for relief from charges in Appeal No. FR–08–09–R–0015, that a partial postmark was visible on the original envelope in which the employer's appeal was initially filed. The Referee indicated in the companion case that he would deny the employer's request for relief under that docket number without prejudice to the employer to pursue its late appeal in the instant matter. He also indicated that he would allow the appeal because the appeal had been timely filed. It is the policy of the Department that where an appeal is filed by the correct date but is misdirected to the wrong office, it is the common practice to treat the appeal as having been timely filed. (Referee's Decision at 2.) We note that "Claimant's position that Employer's appeal was untimely has nothing to do with whether the appeal had been misdirected to the wrong state office." (Claimant's Br. at 7.)

3. This "Court's review is limited to determining whether Claimant's constitutional rights were violated, whether an error of law was committed, or whether the necessary factual findings are supported by competent evidence." *Patla v. Unemployment Compensation Board of Review*, 962 A.2d 724, 726 n. 2 (Pa.Cmwlth.2008).

appeals from determinations of UC service centers is governed by Section 501(e), which states that a Claimant or Employer has fifteen days following notice of an unemployment compensation determination within which to file an appeal. 43 P.S. § 821. The Board's regulations at 34 Pa. Code § 101.82 provide methods by which the time of filing of such an appeal may be determined. Section 101.82(b)(1)(ii) states that "[i]f there is no official United States Postal Service postmark, United States Postal Service Form 3817 or United States Postal Service certified mail receipt," then the date of the appeal's filing will be "the date of a postage meter mark on the envelope containing the appeal." 34 Pa.Code § 101.82(b)(1)(ii). Here, Employer's appeal was mailed in an envelope bearing a postage meter mark dated December 17, 2007, the final day of Employer's appeal period, and is therefore timely per Section 101.82(b)(1)(ii). Claimant argues that, notwithstanding Section 101.82(b)(1)(ii), this postage meter mark is insufficient per the Pennsylvania Supreme Court's decision in *Lin v. Unemployment Compensation Board of Review*, 558 Pa. 94, 735 A.2d 697 (1999). Therefore, Claimant argues, the date Employer's appeal was filed was the date it was received by the Bureau, December 19, 2007.

In *Lin*, the Supreme Court considered whether a private postage meter mark was sufficient to establish the date of filing of an appeal from a UC service center's notice of determination. At that time, the timeliness for appealing such a decision was controlled by Section 101.82(d), which stated that the filing date of a mailed appeal "shall be determined from the postmark appearing upon the envelope in which the appeal form or written communication was mailed." *Lin*, 558 Pa. at 97, 735 A.2d at 698–99 (quoting 34 Pa.Code § 101.82(d)). Regarding whether, under this regulation, the date of filing could be determined by a private postage meter mark, the Court stated:

> We have held several times that a private postage meter mark is not the equivalent of an official U.S. Postal Service mark, and is not determinative of the timeliness of an appeal. We have also recently held that the "regulation [34 Pa.Code § 101.82(d) ] as drafted does not recognize placing an appeal in the mail as the initiation of the appeal. The regulation recognizes only the postmark date...." The U.S. postmark, as opposed to a private meter postmark or testimony concerning the placing of the appeal in the mail box, is virtually unassailable evidence of the time of mailing of an appeal. Accordingly, we hold that when the envelope containing the appeal does not have an official U.S. postmark, it must be deemed filed when received.
>
> ....
>
> We agree with the Commonwealth Court that a United States postmark is the most reliable means of accurately dating the mailing of an appeal in an unemployment compensation case. The date on a private postage meter can be readily changed to any date by the user; therefore it lacks the inherent reliability of the official United States postmark. Accordingly we concur with the Commonwealth Court that an appeal in unemployment compensation matters bearing a private postage meter mark should be considered filed when received. Hence, the appeals filed in the instant cases were untimely as the envelopes bore private postage meter marks and were received after the filing deadline.

*Lin*, 558 Pa. at 98–100, 735 A.2d at 699–700 (footnotes omitted) (citations omitted) (alteration in original) (quoting *Edwards v. Unemployment Compensation Board of Review*, 162 Pa.Cmwlth. 698, 639 A.2d 1279, 1281 (1994)).

Claimant acknowledges that Section 101.82 has been amended since *Lin* to provide that the date of filing of an unemployment compensation appeal may be determined by private postage mark. Claimant argues, however, that as amended, this regulation "is inconsistent with the Supreme Court's holding in *Lin*" and with this Court's analysis in *Dumberth v. Unemployment Compensation Board of Review,* 837 A.2d 678 (Pa.Cmwlth.2003) (en banc).[4] (Claimant's Br. at 2.)

■ We do not agree that the Board erred in relying on the postage meter mark to establish the date of filing of Employer's appeal. As noted above, Section 101.82(b)(1)(ii) explicitly provides that, where there is no postmark or certified mail receipt, the date of filing will be determined by the postage meter mark. 34 Pa.Code § 101.82(b)(1)(ii). Claimant's argument that the Board may not rely on this provision because it conflicts with the Pennsylvania Supreme Court's holding in *Lin* is essentially an attack on the regulation's validity. We note that this Court has "held that a challenge to the validity of a regulation is waived if not raised before the administrative agency." *Pennsylvania National Mutual Casualty Insurance Co. v. Insurance Commissioner,* 121 Pa. Cmwlth. 618, 551 A.2d 368, 372 (1988). Nowhere in the proceedings before the Referee or the Board did Claimant attack the validity of Section 101.82(b)(1)(ii). Only in his Reply Brief does Claimant argue that this regulation may not be relied upon because it conflicts with *Lin.* Therefore, the issue of the validity of the Board's regulation at 34 Pa.Code § 101.82(b)(1)(ii) has been waived.

■ However, even were we to consider the issue, we would not agree that Section 101.82(b)(1)(ii) is invalid. Generally, a regulation promulgated pursuant to an agency's delegated legislative rulemaking authority "is as binding upon a court as a statute if it is (a) within the granted power; (b) issued pursuant to proper procedure[;] and (c) reasonable." *Rohrbaugh v. Pennsylvania Public Utility Commission,* 556 Pa. 199, 208, 727 A.2d 1080, 1085 (1999). Here, Section 3(d) of the Law gives the Board the power to "adopt, amend or rescind such rules of procedure ... as it deems necessary and consistent with" the Law. 43 P.S. § 763(d). The Board amended Section 101.82 pursuant to this authority. 33 Pa. B. 4674 (2003). Section 101.82(b)(1)(ii) is a rule of procedure and, as such, is within the power granted to the Board. Additionally, this regulation appears to have been promulgated through the proper procedures, *see generally,* 33 Pa. B. 4674 (2003) (describing the history of the amendment to Section 101.82), and Claimant makes no argument that the rule's adoption was not procedurally proper. Finally, this Court believes Section 101.82(b)(1)(ii) is reasonable. The Supreme Court, in *Lin,* did state that, under the previous regulation at 34 Pa.Code § 101.82, a private postage meter mark could not be used to determine the date of the filing of an unemployment compensation appeal. *Lin,* 558 Pa. at 99–100, 735 A.2d at 699–700. This holding was founded on the principle that a private postage meter mark is not the equivalent of a U.S. postmark and is not as reliable. *Id.* While we agree, we do not read *Lin* as stating that a private

4. This Court notes that, although *Dumberth* was decided after the amendment to Section 101.82 went into effect, the events in that case took place prior to the amendment's effective date, September 20, 2003, and this Court reviewed the case under the older language of Section 101.82. *Dumberth,* 837 A.2d at 680. *Dumberth* is, therefore, inapposite to the current case.

postage mark may never be used to determine the filing date of an unemployment compensation appeal, or that a postage meter mark is so unreliable that it may not be used to determine such a filing date. And indeed, the Board's regulation at 34 Pa.Code § 101.82(b)(1) does not treat a postage meter mark as the equivalent of a postmark, but gives precedence to the date reflected by a postmark or certified mail receipt. 34 Pa.Code § 101.82(b)(1)(i)-(ii). We believe that Section 101.82(b)(1)(ii) reasonably introduces flexibility into the unemployment compensation system and ensures that appeals by both employers and claimants alike are not denied on the basis of overly rigid technicalities. *See UGI Utilities, Inc. v. Unemployment Compensation Board of Review,* 776 A.2d 344, 349 (Pa.Cmwlth. 2001) (stating that with regard to the then-existing version of 34 Pa.Code § 101.82, "it would seem desirable to incorporate some flexibility where common sense would lead the Board to the conclusion that an appeal was mailed before the deadline"). Therefore, if we were to reach the question, we would hold that the Board's regulation at 34 Pa.Code § 101.82(b)(1)(ii) is valid and that Employer's appeal was timely.

 Turning now to the merits of the case, Claimant argues that the Board erred in determining that his actions constituted willful misconduct sufficient to justify a denial of benefits pursuant to Section 402(e). Section 402(e) provides that a claimant will not be eligible for unemployment compensation when "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e). Although the Law does not define the term "willful misconduct," the Pennsylvania Supreme Court has defined it as:

a) wanton or willful disregard for an employer's interests; b) deliberate violation of an employer's rules; c) disregard for standards of behavior which an employer can rightfully expect of an employee; or d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Caterpillar, Inc. v. Unemployment Compensation Board of Review,* 550 Pa. 115, 123, 703 A.2d 452, 456 (1997). It is uncontroverted that an Employer carries its initial burden of showing willful misconduct when it "establish[es] the existence of the rule, its reasonableness, and that the employee was aware of its existence." *Williams v. Unemployment Compensation Board of Review,* 926 A.2d 568, 571 (Pa. Cmwlth.2007). In this case, the Board found that "the employer credibly established that the claimant violated parking safety policies that he knew or should have known." (Board Decision at 2.) There is substantial evidence in the record to support these findings. Employer's witness testified as to the existence of this policy, and that this policy was explained at a weekly "tailgate talk[ ]," which Claimant attended. (Referee Hr'g Tr. at 12–13.) Employer additionally introduced a topic sheet for the tailgate safety talk in question showing this policy, with an attached sign-in roster listing Claimant's signature. (Wheel Chocks and Parking Precautions, Referee Hr'g Ex. No. E–3; Tailgate Meeting Roster, Referee Hr'g Ex. No. E–4.) Moreover, the facts of this case are very similar to those of *Heitczman v. Unemployment Compensation Board of Review,* 162 Pa.Cmwlth. 275, 638 A.2d 461 (1994) (en banc). In *Heitczman,* the claimant (Heitczman), a truck driver, violated a known work rule requiring him to walk completely around his truck before backing it up. *Id.* at 462. Heitczman backed his truck up in a parking lot and struck a

light standard, which then fell on the truck. *Id.* We concluded that because Heitczman had violated the known work rule, he had committed willful misconduct, despite his argument that "he did not make a deliberate decision to back up the truck improperly." *Id.* at 463. Similarly, here, Claimant violated Employer's known work rule and we must, therefore, affirm the Board.

Claimant, nonetheless, relying on *Navickas v. Unemployment Compensation Board of Review,* 567 Pa. 298, 787 A.2d 284 (2001), argues that "mere negligence does not constitute willful misconduct for purposes of denying UC benefits." (Claimant's Br. at 9.) Claimant argues that, while he forgot to put the parking brake on, there is no evidence that there was anything intentional or willful in his conduct in this regard. We disagree. *Navickas* dealt with the case of a nurse who was discharged for negligently making a medication error, not for violating a work rule.[5] *Id.* at 300–01, 787 A.2d at 286. The Supreme Court overturned a rule fashioned by this Court which held healthcare workers to a higher standard for purposes of willful misconduct than other employees and, instead, analyzed the question of whether Navickas's negligence was such that it showed "culpability, wrongful intent, or evil design, or . . . an intentional and substantial disregard of the employer's interest or the employee's duties and obligations to the employer." *Id.* at 306–08, 787 A.2d at 290 (quoting *Myers v. Unemployment Compensation Board of Review,* 533 Pa. 373, 378, 625 A.2d 622, 625 (1993)). Here, however, the Board proper-

ly found Claimant to have committed willful misconduct not on account of his negligence, but because of his failing to follow a known work rule. Therefore, we must affirm the order of the Board.

### ORDER

NOW, April 27, 2009, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

---

**5.** While there was a work rule at issue in that case, the claimant complied with the work rule, but did so negligently. Specifically, the Supreme Court stated that Navickas:

was aware that she was required, under [her employer's] policies, to look up medication in a reference book . . . before ad-

ministering the medication to a patient. On the day in question, [Navickas] glanced at the reference book but did not read it carefully enough because she thought she had administered the medication previously and knew the proper dilution.
*Navickas,* 567 Pa. at 300–01, 787 A.2d at 286.