IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lori J. Shoemaker,　　　　　　　　　　：
　　　　　　　　　Petitioner　　　：
　　　　　　　　　　　　　　　　　：
　　　　　v.　　　　　　　　　　：　　No. 1717 C.D. 2014
　　　　　　　　　　　　　　　　　：　　Submitted: June 26, 2015
Unemployment Compensation　　　：
Board of Review,　　　　　　　　：
　　　　　　　　　Respondent　　：


BEFORE:　　HONORABLE BERNARD L. McGINLEY, Judge
　　　　　　　HONORABLE MARY HANNAH LEAVITT, Judge
　　　　　　　HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT　　　　　　　　　　　　FILED:　October 19, 2015


Lori Shoemaker (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) denying her claim for unemployment compensation benefits. In doing so, the Board affirmed the decision of the Referee that Claimant was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law), 43 P.S. §802(e),[1] by reason of her willful misconduct. For the reasons that follow, we affirm.

Claimant was employed as a transit driver for Easton Coach Company (Employer) from January 25, 2004, until she was discharged on April 11, 2014.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e), which states that a claimant is ineligible for unemployment compensation whenever his "unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work …."

Claimant's duties required her to transport elderly and handicapped individuals in a small bus. Claimant was discharged for violating Employer's policy requiring drivers to drive safely. Claimant applied for unemployment benefits, which were denied by the Scranton Unemployment Compensation Service Center. Claimant appealed.

At the Referee's hearing, Employer presented the testimony of its Operations Manager, Tracey Deater, and a video recording of an incident that occurred on April 8, 2014, while Claimant was on her regular route. Deater testified as follows:

> [Employer]: And can you explain in detail about the incident that occurred on, it was April 8[th], on Route 78.
>
> [Deater]: [Claimant] was driving on the shoulder of the highway clocked at 71 miles per hour.
>
> [Employer]: And how were you made aware of this incident?
>
> [Deater]: The drive cam went off.
>
> [Employer]: And can you explain what the drive cam is?
>
> [Deater]: A drive cam is installed in all our vehicles, it's set off by a G-force -- sudden braking, an accident -- and it shows 10 seconds prior to and 10 seconds after the incident.
>
> [Employer]: And what did you do when you were made [aware] of this drive cam incident with [Claimant]?
>
> [Deater]: We brought [Claimant] into the office and we sat her down, we reviewed the drive cam with her. And she stated that this is something that she did on a regular basis was ride the shoulder because she was getting off on the next exit and did not seem too concerned over it since it was a habit that she had seemed to have picked up.

Notes of Testimony, June 12, 2014, at 8 (N.T. ___); Reproduced Record at 20a (R.R.__). Deater testified further regarding Claimant's reaction to viewing the video:

> She saw the drive cam and the first word she said was oops. And then she didn't see the dangerous stuff, the other cars in front of her were doing the same thing, and it was something that she did prior to; it wasn't something new to her.

N.T. 11; R.R. 23a.

Claimant appeared *pro se* and testified on her own behalf. She offered the following explanation for driving her bus on the shoulder on April 8, 2014:

> Well the video shows what happened but the reason it happened was because the car in front of me braked when I was getting off into the lane to get off the exit. The car in front of me braked so I braked and I went over to the side because I knew there was plenty of room over there and if -- you can't see behind me on those videos but the lane getting off when you come down over the hill the third lane that all the trucks use those guys when you're coming down over that hill they're moving because they're picking up speed now from being going up the hill slow, they get to the top, and they start picking up speed. When you come around the corner there when you come off the exit there's not a separate exit until maybe 50 feet is the exit but the cars are backed up on that shoulder of the road on that right hand lane and these cars behind me and trucks behind me are barreling down. I'd rather be on the side of the road in case one of those trucks don't see the brake lights that I'm not going to be involved in an accident. That's why I did it. I didn't do it because I couldn't handle the bus, I did it for a specific reason; I didn't want to get rear ended by a bunch of tractor trailers heading down the hill going 60 miles an hour.

N.T. 14; R.R. 26a.

3

The Referee found, *inter alia*, that Employer "has a policy prohibiting the unsafe operation of all company vehicles" and Claimant "admitted to the actions observed on the video indicating it was her regular way of travel." Referee's Decision/Order at 1, Findings of Fact No. 2 and 6. Accordingly, the Referee held that Claimant committed disqualifying willful misconduct. Claimant appealed to the Board, which adopted the Referee's findings and conclusions and affirmed the denial of benefits under Section 402(e) of the Law. The Board specifically discredited Claimant's proffered justification for her conduct, *i.e.*, "that she was riding on a non-authorized lane of traffic in order to avoid an accident." Board Adjudication at 1. Claimant petitions for this Court's review.

On appeal,[2] Claimant argues that the Board erred in concluding that she lacked good cause for violating Employer's policy. Alternatively, Claimant asserts that she was denied a fair hearing because she was not represented by counsel and the Referee was biased against her.

Willful misconduct has been defined by the Pennsylvania courts as, *inter alia*, "a violation of work rules or a disregard of standards of behavior an employer has the right to expect of employees." *ATM Corporation of America v. Unemployment Compensation Board of Review*, 892 A.2d 859, 865 (Pa. Cmwlth. 2006). If a claimant is discharged for violating a work rule, the employer bears the initial burden of showing "the existence of a work rule and that the claimant violated the rule." *Id.* "Once the employer establishes those elements, the burden then shifts to the claimant to show that she had good cause to violate the rule." *Id.*

---

[2] This Court's review is limited to determining whether the factual findings are supported by substantial evidence, constitutional rights were violated, or an error of law was committed. *Moran v. Unemployment Compensation Board of Review*, 973 A.2d 1024, 1026 n.3 (Pa. Cmwlth. 2009).

Here, Employer's demonstrative and testimonial evidence established that Claimant violated Employer's safe driving policy, of which she was aware. Thus, the burden shifted to Claimant to show that she had good cause for violating the policy when she speeded down the shoulder of Route 78. Claimant contends that her conduct was reasonable because she feared being rear-ended by a tractor trailer. Claimant likens the circumstances of her discharge to those of the claimant's in *McLean v. Unemployment Compensation Board of Review*, 383 A.2d 533 (Pa. 1978).

In *McLean*, a claimant refused to operate a truck that he believed was unsafe because of a series of improper repairs made by the same garage. The employer disagreed with the claimant's opinion and ordered him to drive the truck. When the claimant refused, the employer discharged him for willful misconduct. The Board denied benefits under Section 402(e) of the Law, and this Court affirmed. On appeal, our Supreme Court reversed, reasoning that:

> In light of the demonstrated inadequacy of [the previous] repair services, the employer's demand that [the claimant] drive the truck was unreasonable to the extent that the employer insisted it be repaired only by [the same service shop]. The employer had no right to expect an employee to rely upon a repair service which had twice failed in making repairs essential to safe operation; hence, the employee did not disregard a reasonable employer's request.

*McLean*, 383 A.2d at 536. Accordingly, in that instance, the claimant's decision to reject his employer's orders did not amount to willful misconduct.

*McLean* is not analogous to the matter *sub judice*. In *McLean*, there was no dispute regarding the facts; the employer acknowledged that the truck had been improperly repaired twice by the same garage. Here, Claimant and Employer presented conflicting evidence about why Claimant drove on the highway

5

shoulder. Claimant testified that she was trying to avoid being rear-ended by a tractor trailer. Deater testified that Claimant admitted after the incident that she habitually drove on the shoulder in this location. The Board adopted Employer's version of the facts and found Claimant not credible.

Essentially, Claimant asks this Court to reweigh the evidence and render new credibility determinations. However, "the Board is the ultimate finder of fact, and questions of credibility and evidentiary weight to be given to conflicting testimony which was found to be credible are matters for the Board as factfinder and not for a reviewing court." *Stringent v. Unemployment Compensation Board of Review*, 703 A.2d 1084, 1087 (Pa. Cmwlth. 1997). Thus, because Claimant offered no credible evidence that she had good cause for her conduct, the Board did not err in denying her benefits under Section 402(e) of the Law.

Claimant argues in the alternative that she was denied a fair hearing because she "was unrepresented during the Referee's hearing and really was not given a full adequate opportunity to explain her situation. The Referee controlled the hearing and was asking leading questions which were sited [sic] to [E]mployer." Claimant's Brief at 11-12. Claimant concludes that if she "had counsel, most likely there would have probably been a different result." *Id*. at 12.

Claimant's argument lacks merit. Claimant was informed of her right to proceed with counsel in the notice of hearing she received in the mail. Then, at the start of the hearing, the Referee advised both parties that they had the right to be represented by counsel. Claimant stated that she understood and chose to proceed *pro se*. Accordingly, the issue is waived. *Moonlight Mushrooms, Inc. v. Unemployment Compensation Board of Review*, 596 A.2d 1264, 1268 (Pa.

6

Cmwlth. 1991). In any case, because Claimant did not raise this issue in her appeal to the Board, it is waived. *Schneider v. Unemployment Compensation Board of Review*, 523 A.2d 1202, 1204 (Pa. Cmwlth. 1987).

For all of the foregoing reasons, the order of the Board is affirmed.

_____

MARY HANNAH LEAVITT, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lori J. Shoemaker,          :
        Petitioner     :
                      :
        v.             :   No. 1717 C.D. 2014
                      :
Unemployment Compensation   :
Board of Review,         :
        Respondent   :

## **O R D E R**

AND NOW, this 19th day of October, 2015, the order of the Unemployment Compensation Board of Review dated August 26, 2014, in the above-captioned matter is hereby AFFIRMED.

                              _____
                              MARY HANNAH LEAVITT, Judge